[Crim. No. 1726.   Second Appellate District, Division Two.—January 26, 1929.]

THE PEOPLE, Respondent, v. ARTHUR O. BERG, Appellant.

John A. Jorgenson for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

WORKS, P. J.—Defendant was convicted of murder in the second degree. He appeals from the judgment of conviction and from an order of the trial court denying his motion for a new trial.

The information charges appellant with "the crime of murder, a felony committed as follows: That the said Arthur O. Berg on the 13th day of June, 1928, at and in the County of Los Angeles, State of California, did wilfully, unlawfully and feloniously kill and murder one Page Walden, a human being." The charge, thus made, was formulated, with some amplification, in accord with the language of section 951 of the Penal Code as amended in 1927 (Stats. 1927, p. 1043), which prescribes the form of indictments and informations. This section is a legislative exposition of the meaning of section 952 of the same code, also as amended in 1927, which provides that a criminal charge "shall be sufficient if it contains in substance a statement that the accused has committed some public offense therein specified" and that the "statement may be made in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved. It may be in the words of the enactment describing the offense or declaring the matter charged to be a public offense or in any words sufficient to give the accused notice of the offense of which he is charged."

It is contended that sections 951 and 952 are in violation of that portion of the fourteenth amendment to the constitution of the United States to the effect that no one shall be deprived of his liberty without due process of law, but we think it plain that they are not. We think the constitution of the United States requires no more specific statement of the nature of appellant's alleged offense than that contained in the information. Appellant was given the name of his alleged victim, the day and venue of the commission of the offense were specified, the name of the crime was set down,

it was alleged that it was wilfully, unlawfully, and feloniously committed, and the alleged victim was stated to have been a human being. The charge was in the exact language of one approved in *People* v. *Witt,* 170 Cal. 104 [148 Pac. 928], under the old statutes, with the exception that in the latter charge the crime was alleged to have been committed "with malice aforethought." It was said in the case cited: "Concededly, this described the offense of murder in the language of our statute, and is in accord with a form approved over and over again by this court." We cannot see how the omission of the words "with malice aforethought" from the information before us can render the pleading amenable to the objection that it does not show due process of law. It was well settled, under the code sections as they existed before the amendment of 1927, that the omission of those words from such an information as was before the court in the case last cited changed the charge from murder to manslaughter (*People* v. *Bones,* 35 Cal. App. 429 [170 Pac. 166]). The only difference, then, between a charge of murder and a charge of manslaughter, under the former statute, lay in the presence or in the omission of the words "with malice aforethought," as their presence was necessary to a charge of murder (*People* v. *Bonilla,* 38 Cal. 699; *People* v. *Schmidt,* 64 Cal. 260 [30 Pac. 814]). Through sections 951 and 952 of the Penal Code, as amended in 1927, the legislature has declared that murder may be charged by an allegation such as that in the information now before us, to the effect that, with the other averments present, A. B. did "kill and murder" C. D.—section 951 says "murdered C. D."—while manslaughter may be charged in some such form as "did kill and manslaughter C. D.," or perhaps "manslaughtered C. D." We can see no such difference between these new forms of charges and the old ones which had been upheld for so many years, as would render the new ones amenable to the claim that they do not provide due process of law. With the aid of the code sections defining the difference between murder and manslaughter, which, of course, all are presumed to know and understand, and with the other allegations prescribed by section 951, one charged with either murder or manslaughter in accordance with the code is fully informed of the offense laid at his door. We have thus dealt with the matter of both of these

charges for the reason that appellant, in addition to the constitutional question he presents, contends that the information charges only manslaughter. We think the constitutional question is untenable and that the charge made was murder, not manslaughter.

■ The record shows that the crime with which appellant was charged was the result of an abortion claimed to have been practiced by him upon his alleged victim. The prosecution offered as a witness a trained nurse who had served under appellant on the case from the handling of which the charges arose. After she had given some testimony in response to questions of the district attorney, the following occurred, as shown by the record: "[The District Attorney:] You never testified to that [at the preliminary examination], did you? Mr. Jorgenson: Objected to as cross-examination of their own witness. A. No, I did not. [The District Attorney:] If your Honor please, I ask leave to cross-examine this witness on the ground of surprise on a material fact. She has heretofore testified as to all the conversation. Now that she has had time to think it over she wants to change some of her testimony, and we have a perfect right to cross-examine the witness; we are taken by surprise when she changes her testimony. Mr. Jorgenson: She is not changing her testimony. [The District Attorney:] I submit that she has, your Honor. Mr. Jorgenson: All you said was, she didn't testify that before. A person cannot always remember the whole conversation and everything that was said. [The District Attorney:] No, but sometimes they can when their memory is refreshed in the meantime. The Court: I will sustain the objection."

Appellant contends that the district attorney was guilty of misconduct in asserting that the witness had "changed her testimony." Without deciding the particular point, we think the question is not available to appellant. If the officer's remarks were misconduct we think the offense was not so flagrant that the effect of what he said could not have been removed by an admonition to the jury couched in proper terms. Appellant asked for no admonition, however, nor did he hint to the court that misconduct had been committed.

Because of a somewhat involved chain of events connected with the testimony of another witness offered by the prose-

cution it is insisted that the district attorney was guilty of misconduct and that the trial court committed error. This witness was the office nurse of appellant. In passing upon the contentions made we shall determine as we go along whether, in specific instances, the court erred.

█ The witness was asked what class of patients appellant had at his office, whether they were male or female, and objection was made and overruled. "A. He had men and ladies. . . . Q. They were mostly young girls, were they not?" An objection was then made and overruled. "A. There weren't very many young people. He had people about 30 or 40 or 50." The court erred in each of the rulings mentioned in this paragraph. The only purpose of the questions, evidently, was to show that appellant was operating his office for the performance of abortions. If we grant for the sake of argument, what we are far from deciding, that other crimes may be proved in cases of this nature in order to show system or intent, the questions cannot be justified on that ground, as "it is not competent for the prosecutor to introduce irrelevant evidence falling short of crime and designed merely to degrade and prejudice the defendant in the minds of the jury" (8 Cal. Jur. 59). The extent to which the rulings of the court were harmful, considering the nature of the answers given to the questions propounded, will be determined later, as will the question of the injury done by other errors which were committed, as shown below.

The record contains the following, with the same witness on the stand: "Q. To your knowledge was Dr. Berg performing any abortions there? Mr. Jorgenson: Object— A. No, I do not. . . . Q. That is you don't know? A. No. Q. These patients there were mostly women were they not?" Objection made and overruled. "A. Most of our patients were women." The ruling here exhibited was error.

█ The next instance: "Q. Most of these women patients that came there were pregnant or in a family way, were they not? Mr. Jorgenson: Objected to as irrelevant. A. I don't know. The Court: The objection will be overruled. [The District Attorney:] How? Mr. Jorgenson: What was the answer? A. I couldn't tell anything about it." The ruling referred to in this paragraph was error.

The office nurse was asked whether appellant, at a time when police officers came to his office, did not hide in a closet and she responded that she did not know. She was then asked whether she told one of the officers, on the same occasion, that appellant had said "he was going away for a few days." The district attorney then presented to her a statement made by her to certain police officers and asked her whether it refreshed her recollection as to what was said at the time. She said it did not. He then offered to read a question and answer he had shown the witness and objection was made and overruled. The prosecutor next inquired whether, at a place and date specified and in the presence of persons named—police officers and others—she did not make a statement. Objection was again made and overruled. The prosecutor then inquired whether at the time specified the witness was asked, "He came in hurriedly, didn't he?" evidently referring to appellant, and whether she did not answer, "Yes." Objection was again made and overruled, whereupon the nurse answered that she did not remember saying that. She was then asked whether anyone had told her what testimony to give and whether anyone had told her to refuse to testify. To both questions she answered in the negative. She was next asked: "Isn't it a fact that counsel for the defendant told you to refuse to testify in this case?" Objection was made and overruled and the inquiry was answered in the negative. The prosecutor then read to the witness the following portion of a statement given the district attorney after the preliminary examination: "Q. Do you know a lawyer by the name of John C. Jorgenson? . . . A. Yes. Q. You know he is the lawyer for Arthur O. Berg? A. Yes. Q. He is not your lawyer, is he? A. No. . . . Q. He has never come to see you? A. No, just to get Dr. Berg's license after the hearing. . . . Q. Prior to that time you had never had any dealings with him? A. No. Q. You remember the day you went to court on this? A. 22nd of June. Q. Did he talk to you at that time? A. He talked to me, yes. Q. What did he say to you? A. Just talked, said 'Hello,' and I said, 'Do you think things are going to be all right?' and he said, 'Yes.' Q. Then what did he say? A. I remember what I said, 'Will I be the first one called up?' and he said, no, he did not think so. He said, 'It is nothing to worry

about, just refuse to testify.' Q. Did he tell you why you should refuse to testify? A. No, I did not ask him. Q. You followed out his instructions and you refused to testify; is that right? A. Yes. Q. And the only reason is because he told you not to? A. Yes, that is the only reason.'' The witness then stated that she had so answered the questions. She also said that the statement was the truth, but an objection was made to the question which drew forth this answer, after it was made. The objection was sustained and the answer was stricken.

After the office nurse had concluded her testimony and after other witnesses had testified, the trial judge made the following remarks, interspersed with statements of counsel: ''While the witness Corinne Kissell was on the stand certain questions were asked her, apparently for the laying of the foundation for impeaching questions, and the State has not offered any evidence of an impeaching nature, and I think that the jury should be instructed to disregard any inference that may have been gained or gathered by them from the asking of those questions. . . . I am going to cover it in this way: Ladies and gentlemen of the jury, before the case proceeds further, if you have gained any inference through the asking of any questions of the witness Corinne Kissell that she may have made statements at other times contrary to her testimony here on the stand, you must disregard any such inference. Is that clear to the jury? In other words, without emphasizing those particular matters by asking the reporter to read back in his notes, to read over those questions, you will merely disregard that such questions were asked. If that is not entirely clear to the jury, I can explain it farther. Very well, proceed. [The District Attorney]: Do I understand your Honor is instructing them to disregard her own admission that she at other times made contradictory statements? The Court: No, no, not as to that, but as to anything other than the testimony of the witness on the stand that she may at other times have made a statement contradictory to her sworn testimony during the progress of this trial. [The District Attorney]: In other words, your Honor is instructing them that they must not draw an inference from the asking of the question where we have not proved the contrary, but if the contrary has been proved by other witnesses or by her own

testimony the jury may make proper inferences from that? The Court: Oh, yes, the jury may, of course, consider any testimony that has been admitted here properly, any testimony of witnesses from the stand may be considered and weighed by you, but from the mere fact of the asking of the questions, or certain of the questions of the witness, that the witness Corinne Kissell may have made, if you have drawn such inference, that she may have made certain admissions, from the mere asking of the questions, you must disregard such inference or any inference based solely upon the fact that such questions were asked her. A Juror: But we can take her testimony? The Court: You can take her testimony, yes.''

During the final argument of the cause before the jury the district attorney said of the office nurse that at "one time she said nobody told her not to testify, and the next time she said somebody told her not to testify.'' The trial judge here interrupted the prosecutor and counsel for appellant objected to his statement. The judge observed: ''There is no evidence in the case, no statement admitted in evidence indicating she made that statement.'' This remark was followed by a colloquy between court and counsel and then the following occurred: ''The Court: Well, I fear the jury may misconstrue the evidence, and I am going to take this occasion here and now to instruct the jury. The testimony of the witness Corinne Kissell was: 'Q. Has anyone told you to refuse to testify? A. No, sir.' Then there were certain questions asked her, and the objection was sustained. And later in the case, if I recall correctly, she was asked if at the time she made a statement in the district attorney's office it was true and [sic] false and she said true, but that statement is not in evidence, and the purpose of impeaching questions is not to establish the fact embraced in the question, or the assumed fact, I should say, embraced in the question, but rather to raise an issue as to the credibility of the witness, and therefore you may consider those questions and answers as to contradictory statements for the purpose of the credibility of the witness, to determine whether or not the witness did in these particulars or in other particulars speak the truth, but not as to the facts assumed in the questions themselves. [The District Attorney] : The statement itself that she gave there at that time,

your Honor, was read into the record in this case, and she said that that statement was true. That was what I had reference to. The Court: You asked her if she did not make the statement and she said the statement was true. [The District Attorney]: Yes. The Court: But she at the same time denied the fact that she had been instructed not to testify in the case, so her admission that the statement was true might be taken by the jury as touching upon her qualifications to speak the truth; in other words, as to her credibility as a witness, but not as to the truth contained in the statement, which is not in evidence. In other words, it is an admission that she made a contradictory statement at another time." Before the district attorney concluded his argument the trial judge again took up the same subject: "The Court: Well, I think we had best take an adjournment at this time. Before we do, and while the matter is on my mind, I am thinking of the testimony concerning which you have just made reference to with respect as to whether the witness Corinne Kissell was or was not instructed to refuse to testify, and I fear that that evidence, particularly in view of the fact that it has been emphasized by the district attorney, might be misconstrued by the jury. That is not an issue in this case whatever. The evidence is introduced and the jury is required to consider the evidence in determining whether or not the crime was committed as charged in the information. I fear that the cross-examination, amounting almost to impeachment of the witness Kissell, was or might be construed as an attempt to impeach the witness on an immaterial matter, and I believe, inasmuch as the matter has been emphasized, that I will instruct the jury to disregard entirely the questions as to whether the witness Corinne Kissell was or was not instructed to refuse to testify in this case, and to consider only the evidence of the witness Kissell with respect to the issues in the case; that is, to consider the evidence only for the purpose of determining whether there was or was not a crime committed as charged in the information." Closely following these observations the record shows this: "A Juror: Your Honor, can we consider whether she was a willing or a reluctant witness? The Court: Yes, you have an opportunity, as I will advise you further at the conclusion of the case, to weigh the testimony

of every witness, consider their manner upon the stand and the manner in which they testify. That is exclusively within your province to consider not only the spoken words but the attitude of the witness while on the stand and the manner of the witness' testimony. That applies, of course, not only to the one witness, but to every witness who is produced in the case.''

In his final instructions the trial judge told the jury that a witness may ''be impeached by evidence that he has made, at other times, statements inconsistent with his personal testimony as to any matter material to the cause on trial,'' and he gave the following specific instruction concerning the testimony of the office nurse: ''You are instructed to disregard all questions to and answers by the witness Corinne Kissell made during the trial of this case in this court relating to what such witness may or may not have stated or testified heretofore and her conduct in reference to such former statements or testimony, if any, excepting only such statements which the evidence shows she may or may not have made at the time of the defendant's arrest at her apartment, but you may consider all other testimony of such witness and weigh it in accordance with the rules I have given or will hereafter give you the same as the testimony of any other witness in the case.''

Thus was this involved chain of circumstances ended. Appellant contends that the trial court erred in permitting, over repeated objections, that portion of the examination of the office nurse which terminated in the question whether in her statement to the police officers she had answered in the affirmative the question, ''He came in hurriedly, didn't he?'' We think the contention must be upheld. The witness was not confronted with her earlier statement for the purpose of showing that she had made assertions inconsistent with her testimony, but with the intent only of showing something to which she had not testified. ''If a witness merely fails to testify as expected, that does not authorize the party calling him to prove that the witness had elsewhere made the desired statements'' (*People* v. *Creeks*, 141 Cal. 529 [75 Pac. 101]).

It is also insisted that the court erred in allowing the district attorney to question the witness about her statement made to him, in which she referred to her refusal to testify

at the preliminary examination and in which she gave the reasons for the refusal. We think the point is well taken. We can conceive of no theory upon which this evidence was admissible.

We proceed now to other features of the case. ▇ A statement made by appellant in the form of question and answer, taken down in shorthand and transcribed before the trial, was exhibited to a witness who had heard the questions asked and answered, and he was asked whether the answers were "free and voluntary." The question was objected to on the ground that it called for a conclusion of the witness, and the same point is now made here. The objection was not good. It is the constant and proper practice to ask such a question as a part of the foundation for the reception in evidence of confessions made by those charged with crime, although technically it does call for the statement of a conclusion. The recognized practice, after such a question is answered in the affirmative, is for the defendant to show, by a cross-examination which he may at once conduct, the entire circumstances surrounding the making of the confession.

▇ The defense made by appellant was that an operation for an abortion had been performed upon his alleged victim by some other person and that she had come to him for relief from its effects. Appellant sought to detail to the jury what the alleged victim said to him when she came to his office for treatment, but the testimony was ruled out as hearsay. He also endeavored to prove what the woman told him as to her condition while she was on his operating table, and this evidence was excluded on the same ground. We are pointed to no case which decides whether or not such evidence is admissible on behalf of a defendant, but we are clearly of the opinion that it is. The People may un- doubtedly show in a criminal abortion case that the victim had declared to the defendant that she came to him for the purpose of procuring an abortion to be performed upon her, as the decided cases are plainly to the effect that such declarations, when made to third parties before a visit to the defendant, are admissible to show the purpose of the visit (*People* v. *Wright,* 167 Cal. 1 [138 Pac. 349]; *People* v. *Thomas,* 51 Cal. App. 731 [197 Pac. 677]. And see *People* v. *Seiffert,* 81 Cal. App. 195 [233 Pac. 189].) It would

be strange indeed if the defendant could not prove, in such a case, either by his own testimony or by that of others who were present, that the alleged victim declared that she came to him for a totally different purpose, for instance, to be treated for a condition resulting from an operation for abortion already performed by some other person.

Other points are made by appellant but we think it unnecessary to consider them.

We have found it unnecessary, in view of the nature of the errors shown in the record, to read the transcript of the testimony taken at the trial, in view of the provisions of section 4½ of article VI of the constitution. Appellant was damaged by the questions propounded to his office nurse and which were intended to show the age, sex, and condition of the patients who frequented his office, especially as the witness made answer to one of the questions to the effect that most of the patients were women. He was also damaged by other improper questions addressed to the same witness, especially those which brought out the fact that, upon the suggestion of his counsel, she had refused to testify at the preliminary examination. We think this harm was not wholly eradicated by the involved instructions which the trial judge gave to the jury with relation to that testimony, especially in view of what the court said, in connection with that very matter, in response to the question of a juror as to whether the jury might consider whether the witness was a reluctant one. We think the court's response conveyed to the jury the idea that they might determine, from the fact of her refusal to testify at the preliminary examination, that the witness was an unwilling one. The crowning error, we think, was in the court's refusal to permit appellant to testify to what his alleged victim told him as to the purpose of her call upon him. In view of this error it can make little difference what was the evidence upon which the jury pronounced its verdict of guilt. If appellant had been permitted to present the excluded testimony a field of inquiry might have been opened which would have fastened the crime under investigation upon some person other than himself.

We find it unnecessary, because of the view we take concerning the errors of the court, to determine whether the

district attorney was guilty of misconduct while the office nurse was on the witness-stand.

Judgment and order reversed.

Craig, J., and Thompson (Ira F.), J., concurred.