[Civ. No. 23031. Second Dist., Div. Two. Apr. 18, 1958.]

ERNEST V. BERRY, Appellant, v. CHROME CRANK-SHAFT COMPANY (a Corporation) et al., Respondents.

William C. Babcock and Gene W. Arant for Appellant.

Benjamin J. Goodman and Lyon & Lyon for Respondents.

ASHBURN, J.—Plaintiff sued Chrome Crankshaft Company and others for an injunction against the use of plaintiff's trade secrets and secret processes, and for damages for wrongful use of same in the past. Though at issue the cause has not been tried. In conjunction with Benjamin J. Goodman, Esq., the firm of Lyon & Lyon, Los Angeles patent attorneys, has appeared for defendant Chrome Crankshaft Company. During the taking of the deposition of Lile W. Harvey, one of plaintiff's employees, plaintiff's attorney made the claim that Mr. Lewis E. Lyon, who was examining the witness, was disqualified to represent defendant because he had previously represented plaintiff pertaining to matters involved in the instant case; demand was made that he and his firm withdraw as attorneys for defendant. The claim that Mr. Lyon had previously represented plaintiff was denied and the demand for withdrawal of Lyon and Lyon as attorneys for defendant was rejected.

Thereupon, plaintiff made a motion for an order requiring Messrs. Lyon and Lyon to withdraw as attorneys for defendant, Chrome Crankshaft Company, to desist from assist-

ing any present or future defendant or any attorney for any defendant with respect to any issue or matter involved in the suit; also requiring said Lyon and Lyon to return to plaintiff copies of three certain patent applications theretofore submitted to Mr. Lewis Lyon by plaintiff's attorney, Mr. William C. Babcock. The motion was made upon the ground "that said attorneys in early 1955 rendered legal services to their client ERNEST V. BERRY, who then conducted the business which is now conducted by the plaintiff corporation as his successor in interest, and during that employment acquired confidential information concerning the very trade secrets upon which the present action is founded." The motion was heard upon affidavits and oral evidence and was denied. The trial judge said: "I don't find any evidence in this record to indicate, and upon which a finding could be made, that Lyon and Lyon or Lewis E. Lyon, or any other member of that firm was ever retained by or employed by or represented, directly or indirectly, the plaintiff in this litigation, and therefore, the motion is denied." From the order made pursuant to this ruling plaintiff appeals. It is an appealable order. (*Meehan* v. *Hopps*, 45 Cal.2d 213 [288 P.2d 267].)

Counsel agree that the only question on this appeal is whether the evidence is sufficient to sustain the implied finding that Mr. Lewis E. Lyon never acted as attorney or legal consultant for plaintiff corporation or its predecessor in interest, Ernest V. Berry. Berry is president and sole owner of the corporate plaintiff.

Mr. Lewis E. Lyon made an affidavit, received in evidence, in which he said:

"That affiant did not at any time represent said ERNEST V. BERRY or his company and received no instructions and no information from said company or said ERNEST V. BERRY other than herein set forth;

"That affiant was at no time informed either by said JOHN B. RAUEN or by said ERNEST V. BERRY or by anyone representing said ERNEST V. BERRY as to the nature of contemplated arrangements between said JOHN B. RAUEN and said ERNEST V. BERRY or his company;

"That affiant represented said JOHN B. RAUEN solely in matters relating to patents and patent applications and did not represent JOHN B. RAUEN in any other matters or dealings he may have had with said ERNEST V. BERRY or Precision Engineering Company."

The exception mentioned in the first quoted paragraph obviously refers to information obtained upon inspection of plaintiff's plant and from the patent applications. That affidavit also says: "That affiant has not at any time represented in any capacity said ERNEST V. BERRY or his company, Precision Engineering Company, and has obtained no information in confidence with respect to either said party, his or its operations or equipment."

Mr. Lyon testified without objection that he never undertook to represent Mr. Berry personally, never did do so, and never represented Ernest V. Berry, a corporation, doing business under the name and style of Precision Engineering Company, and that no member of his firm had had any part in this transaction other than himself. Also, that he at no time believed that he was acting as attorney for anyone other than Mr. Rauen, and that Mr. Babcock (Berry's patent attorney) at no time stated to him or led him to believe that he was to act as attorney for Mr. Berry.

This testimony, though embracing conclusions, was sufficient to sustain the implied finding of the court's order. █ It is settled law that incompetent testimony, such as hearsay or conclusion, if received without objection takes on the attributes of competent proof when considered upon the question of sufficiency of the evidence to support a finding. (*Estate of Fraysher*, 47 Cal.2d 131, 135 [301 P.2d 848]; *Powers* v. *Board of Public Works*, 216 Cal. 546, 552 [15 P.2d 156]; *Mercantile Trust Co.* v. *Sunset Road Oil Co.*, 176 Cal. 461, 466 [168 P. 1037]; *Yule* v. *Miller*, 80 Cal.App. 609, 616 [252 P. 733]; *Swegle* v. *State Board of Equalization*, 125 Cal. App.2d 432, 437 [270 P.2d 518]; *Abbott* v. *Limited Mut. Comp. Ins. Co.*, 30 Cal.App.2d 157, 163 [85 P.2d 961]; *Ingraham* v. *Smith*, 83 Cal.App.2d 807, 808 [189 P.2d 721]; *Riverside Rancho Corp.* v. *Cowan*, 88 Cal.App.2d 197, 207 [198 P.2d 526]; *Weingetz* v. *Cheverton*, 102 Cal.App.2d 67, 74 [266 P.2d 742]; 3 Cal.Jur.2d, § 156, pp. 634, 636; 4 Cal.Jur.2d, § 534, p. 388; 18 Cal.Jur.2d, § 131, p. 576.) In *Yule* v. *Miller*, *supra*, it is said (p. 616): █ "Evidence technically incompetent admitted without objection must be given as much weight in the reviewing court in reviewing the sufficiency of the evidence as if it were competent (*Parsons* v. *Easton*, 184 Cal. 764 [195 P. 419]; *Janson* v. *Brooks*, 29 Cal. [214,] 223; *Curiac* v. *Packard*, 29 Cal. [194,] 197; *McCloud* v. *O'Neall*, 16 Cal. [392,] 397; *Williams* v. *Hawley*, 144 Cal. [97,] 102 [77 P. 762])."

True, there were opposing conclusions in certain of plaintiff's affidavits (he produced no oral evidence) but it was the prerogative of the trial judge to accept that portion of the evidence which he found credible and to reject that opposed to it. "In a matter in which an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contentions of the prevailing party establish not only the facts stated therein, but also all facts which reasonably may be inferred therefrom. Where there is a substantial conflict in the facts presented by the affidavits, the determination of the controverted facts by the trial court will not be disturbed on appeal." (*Beckett* v. *Kaynar Mfg. Co., Inc.*, 49. Cal.2d 695, 699 [321 P.2d 749].) To the same effect, see *Hayutin* v. *Rudnick*, 115 Cal.App.2d 138, 140 [251 P.2d 707] ; *People* v. *Kirk*, 109 Cal.App.2d 203, 207 [240 P.2d 630] ; *Greenwell* v. *Caro*, 114 Cal.App.2d 35, 38 [249 P.2d 573] ; 4 Cal.Jur.2d, section 614, page 495.

But the ruling at bar does not rest upon conclusions alone. Viewing the evidence most favorably to respondent's position, as we must do, the factual situation appears to be as follows. Prior to incorporation of plaintiff in October, 1955, Ernest V. Berry was engaged in business under the name of Precision Engineering Company, which business consisted of reconditioning large diesel engine crankshafts such as are used in railroad locomotives. Early in 1955 he desired to expand the business from a single plant located in Los Angeles to a nationwide enterprise with plants in Illinois and Pennsylvania. This required additional capital. Berry told Mr. Homer Keeler of this plan and the need for financing ; Keeler was an exporter with whom Berry did business. He told Berry "that he knew a Mr. John Rauen who had recently disposed of his interest in the United States Spring and Bumper Company, and who might be interested in making a financial investment in Mr. Berry's company. Mr. Berry then informed your affiant that he would like to meet Mr. Rauen. Your affiant subsequently arranged a meeting between Ernest V. Berry and John Rauen." (Quoting Keeler affidavit.) Rauen became interested in the prospect of investing in the business and of inviting others to do so. Berry had certain patent applications pending and Rauen considered an investigation of their validity as essential to a decision on his part about investing with Berry. The Keeler affidavit further says: "John Rauen told your affiant that he was interested

in the deal but that he wanted his patent attorneys to determine the validity of certain patents which Mr. Berry claimed to have. Mr. Rauen advised your affiant that his attorneys were Lyon & Lyon. Mr. Rauen also told your affiant that if his attorneys decided that the patents were valid, he would then make a proposal to Mr. Berry.'' Again, ''That Ernest V. Berry personally informed your affiant that he had agreed with John Rauen that John Rauen could use his attorneys, Lyon & Lyon, to check the validity of his patents, and that he, Ernest V. Berry, would personally reimburse John Rauen for any expenses involved.'' Rauen had known Lewis E. Lyon for many years and had employed him from time to time in patent matters. The Lyon affidavit says: ''That during February 1955 said JOHN B. RAUEN engaged affiant to investigate the pending patent claims of ERNEST V. BERRY, informing affiant that he was interested in the question of the patent rights of said ERNEST V. BERRY because he contemplated entering into a financial arrangement with said ERNEST V. BERRY or Precision Engineering Company, a company which affiant was then informed was owned by said ERNEST V. BERRY.'' Rauen arranged for Mr. Babcock, who was Berry's patent attorney, to furnish Lyon with required information concerning the pending applications for patent; this was done. After Mr. Lyon had examined same he expressed to Rauen a desire to see Berry's plant in order to check the actual operation against the statements in the applications. Rauen took him to the plant. There Lyon saw Berry, who showed him the operation. On no other occasion did Lyon see or talk to plaintiff until they met in court. Berry never requested any services from him. After this inspection Mr. Lyon examined in Washington, D. C. the pertinent patent files. He then rendered a written opinion to Rauen, billed him for the same and was paid by Rauen's check. He never furnished any copy of his opinion to Berry, had no communication with him concerning it, did not bill him for it or receive any pay from him. The payment of this bill by Rauen ended the matter so far as Lyon was concerned until he was employed to represent Chrome Crankshaft Company in a patent suit brought by Berry and in the instant litigation. The Rauen affidavit says: ''That affiant was in no way acting upon behalf of ERNEST V. BERRY in procuring the services of Lewis E. Lyon in investigating this matter.'' Lyon's affidavit: ''That no information was communicated to affiant in confidence by said ERNEST V. BERRY or his employees at said

inspection, or any other time. The place of business was open to anyone and no guards, signs or other notice was observed by affiant which would indicate an attempt to maintain secrecy of any operation or equipment." Not until July 30, 1957, about two years later, did Mr. Lyon ever hear of any suggestion that he was or had been acting for plaintiff Berry in what he had done in the patent investigation and rendering opinion thereon.

Counsel for appellant stress evidence favorable to their position, such as a claim that Rauen was acting as financial adviser to Berry and agent for him in employing Lyon. This was refuted by Rauen's and Keeler's evidence. "With rhythmic regularity it is necessary for us to say that where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is *any* substantial evidence to support them; that we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. No one seems to listen." (*Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 757].)

In the last analysis, this appeal is the familiar effort to induce a court of review to weigh the evidence. This we do to the extent of ascertaining whether there is in the scale evidence favorable to respondent which possesses substantiality. We answer that question in the affirmative here. Further we need not go.

Order affirmed.

Fox, P. J., and Herndon, J., concurred.