[Crim. No. 7415.   In Bank.   Aug. 15, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIE JAMES KING et al., Defendants and Appellants.

Joseph H. Lewis, E. V. Cavanagh and Don Edgar Burris for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George W. Kell, Deputy Attorney General, for Plaintiff and Respondent.

GIBSON, C. J.—King and Mackey were found guilty in separate trials of possession of heroin for sale in violation of section 11500.5 of the Health and Safety Code, and King was also found guilty of possession of marijuana in violation of section 11530. They have separately appealed from the judgments entered against them, and Mackey has also appealed from the order denying a new trial. That order is not appealable (Pen. Code, § 1237, as amended in 1961), and the appeal therefrom is dismissed.

I

King's sole contention is that there was insufficient evidence to show that he knowingly possessed marijuana or heroin.

An informant known as "Jo Jo" (whose full name was disclosed at trial) told Police Officer Loeber that King was selling narcotics at an upholstery shop in the 700 block on Florence Avenue in Los Angeles and had narcotics secreted there in a sewing machine near the entrance. After receiving this information, Loeber and other law enforcement officers went to King's Upholstery Company and searched the shop with King's consent. On examining the sewing machine, Loeber found a purse in which there were seven balloons containing heroin. King denied knowing the drug was there and said that the sewing machine in which it was found had been rented to some Mexicans whose names he did not recall. He also stated that he was the salesman for his company and had never used the sewing machine and that it was used by the six others who worked at his shop. On the purse which contained the heroin was the name "Bonita Mackey." King had a brother-in-law whose brother had a child by that name, and so far as appears no one else working in the shop had any connection with a person of that name.

On the same day that the shop was searched Police Officer Northrup, accompanied by other law enforcement officers, went to King's home and searched the house with the consent of his wife. They found a marijuana cigarette in a pocket of his coat which was hanging in a closet. They also found wheat straw cigarette papers, a can of milk sugar, and cellophane bags containing numerous balloons. There was expert testimony that wheat straw papers are used for rolling marijuana cigarettes, that milk sugar is employed to cut heroin, and that balloons are used to store heroin. When King was informed that the marijuana had been found in his coat he denied any knowledge of the presence of the drug, and he subsequently said that he had never worn the coat and had bought it from a woman whose husband had died.

The evidence is sufficient to show that King knowingly possessed both marijuana and heroin.

## II

Mackey claims that certain evidence, which was received over his objection, was obtained by an illegal search and seizure.

Police Officers Loeber and Leeds saw Jo Jo leave 919 West 51st Street and approach a car in which there were four persons, two of whom the officers recognized as narcotics users. The next day they saw Jo Jo talking to Mackey at the same address, and they also observed the occupants of seven cars enter the house at that address and leave shortly thereafter. One of these persons was recognized as a narcotics user. Jo Jo told the police that Mackey was selling narcotics at the 51st Street address, and Loeber thereafter advised Leeds that information given by Jo Jo with respect to King had proved correct.

Upon getting this report Leeds and two other officers went to the 51st Street address about 12:30 p.m. on the day of Mackey's arrest. They did not have an arrest or search warrant. Leeds knocked on the door, and, when no one responded, he shouted "Police officer" into an open window. There was no answer, and Leeds removed the screen from the window and entered the house. He again yelled, "Police officer," but no one replied. He then unlocked the front door and let the other officers in, and they conducted a thorough search of the premises. On the sink in the kitchen they saw a small funnel and spoon of the type used for measuring heroin, and in a cupboard and in a drawer they found other

paraphernalia connected with heroin. A package of heroin was discovered in a clothes basket.

Mackey was not arrested until an hour or more after the police entered the premises at the 51st Street address, and the arrest took place several blocks away. He admitted that he lived at the 51st Street address but denied any knowledge of the heroin or narcotics paraphernalia which had been found. These items were received in evidence over his objection that they had been obtained by an illegal search and seizure.

█ Mackey made a prima facie case that the search was illegal when he established that it was made without a warrant, and the burden then rested on the prosecution to show proper justification. (*People* v. *Haven*, 59 Cal.2d 713, 717 [31 Cal.Rptr. 47, 381 P.2d 927]; *Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23].) █ The Attorney General urges us to uphold the search on the theory that it was incident to Mackey's lawful arrest. However, regardless of the legality of the arrest, the search cannot be justified as incident to the arrest "for it was at a distance from the place thereof and was not contemporaneous therewith." (*Castaneda* v. *Superior Court*, 59 Cal.2d 439, 442 [30 Cal. Rptr. 1, 380 P.2d 641]; *Tompkins* v. *Superior Court*, 59 Cal. 2d 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113]; *People* v. *Gorg*, 45 Cal.2d 776, 781 [291 P.2d 469].) █ In the cited cases the arrest preceded the search, and the application of the rule there set forth is even clearer where, as here, the arrest not only occurred at a different place and time but was made after the search.

### III

The judgment against King is affirmed. The judgment against Mackey is reversed.

Traynor, J., Schauer, J., Peters, J., Tobriner, J., and Peek, J., concurred.

McCOMB, J., Concurring and Dissenting.—I concur in affirming the judgment as to defendant King, but I would also affirm the judgment as to defendant Mackey, for the reasons expressed by Mr. Justice Fourt in the opinion prepared by him for the District Court of Appeal in *People* v. *King* (Cal.App.) 30 Cal.Rptr. 44.