[Crim. No. 13438. Second Dist., Div. Five. July 15, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. PETER ESCOLLIAS, Defendant and Appellant.

William R. McVay, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Phillip G. Samovar, Deputy Attorney General, for Plaintiff and Respondent.

STEPHENS, J.—By information defendant was charged with violation of section 11530.5 of the Health and Safety Code (possession of marijuana for sale) (count 1). He pleaded not guilty and waived trial by jury. After the trial, he was found guilty as charged. His motions for a new trial and probation were denied. Defendant was sentenced to state prison for the term prescribed by law. Appeal is from the judgment and the order denying his motion for a new trial.

Officer Warren of the Los Angeles Police Department was informed by his watch commander that a private citizen had phoned the police department and told the watch commander that a blue and white car was parked in the 1300 block of 5th Avenue; that the citizen had observed one of the three passengers of the vehicle, a male Negro wearing a T-shirt, get out of the car and hold conversations with persons passing on the sidewalk; that the male Negro was observed to go to the trunk of the car, open it and take out a cellophane-wrapped package which was exchanged for money with the persons. Officer Warren stated that this information "indicated to me there may be possibly a sale of narcotics from a vehicle parked on the street." Accompanied by his partner, Officer Warren proceeded to the location to investigate. Upon arriving at the location, a vehicle and its passengers that matched the description forwarded by the watch commander were observed. Officer Warren requested that the passengers get out of the car, and they did. He then asked one of the passengers whose car it was, and the passenger replied that he did not know. Officer Warren then advised each of the persons who had gotten out of the vehicle of their constitutional rights. At this juncture there had been no arrest. The defendant was

wearing a T-shirt. The officer asked the defendant to whom the car belonged, and he stated that he did not know. The three persons were then asked to go to the sidewalk and join a fourth person who had been on the sidewalk when the police unit arrived. This fourth person was likewise warned of his constitutional rights. The officer then asked the defendant where the car's keys were. He stated they were in the car, and gave permission to the officer to search the car for the keys. The officer checked the ignition for the keys and found that they were not there. Officer Warren then walked around to the other side of the car and observed the defendant throw a set of keys into the bushes in front of the adjacent building. The officer recovered the keys, and used them to open the trunk of the car. In the latticework on the underside of the trunk lid the officer found a brown paper bag in which were several waxed paper bags that contained marijuana.

 The question presented is whether there was reasonable or probable cause for the search of the car trunk and the seizure of the revealed contraband. The result of the search, if made without reasonable or probable cause, may not justify the search or subsequent arrest.

Defendant devotes a large part of his brief to arguing that the consent doctrine cannot be invoked to legitimatize this search. The Attorney General, on the other hand, wisely does not press this approach, since whatever limited consent to search might have been given, the act of throwing the keys away would certainly have indicated no further consent was given from that point on. (*Castaneda* v. *Superior Court,* 59 Cal.2d 439 [30 Cal.Rptr. 1, 380 P.2d 641].) Rather, the Attorney General argues that probable cause for the arrest comes from the corroboration of the informer, or from circumstances justifying a belief that the car had been stolen by defendant. The warrantless search is then permitted, it is argued, as incident to the arrest.

We do not agree with the Attorney General. The first hurdle that the state must get itself over is the doctrine of *People* v. *Harvey,* 156 Cal.App.2d 516 [319 P.2d 689]. Briefly stated, this case stands for the proposition that the state cannot meet its burden of showing probable cause in a warrantless arrest situation merely by having the arresting officer testify that a fellow officer had directed him to make the arrest. The state must produce the officer who had obtained information giving probable cause so the basis of his conclusion can be examined in court. In this case, the People never

called the watch commander who received the information from the unidentified private citizen.

To raise the rule of *Harvey,* there must be an objection made in the trial court. (Cf. *People* v. *Wohlleben,* 261 Cal. App.2d 461, 465-467 [67 Cal.Rptr. 826].) Defense counsel objected to the introduction of the physical evidence on general search and seizure grounds. The thrust of his argument was that any consent given to search was limited, the limitation being made clear by the act of throwing away the keys, and that the combination of the data given the arresting officer and the corroborating facts did not amount to probable cause. We recognize that in criminal prosecutions, objections are generally liberally construed. (Witkin, Cal. Evidence (1966) § 1292.) We also recognize that an objection on hearsay grounds would not suffice, since hearsay can be used to establish probable cause. (Witkin, Cal. Evidence, § 111.) However, defense counsel must, by his objection or argument, indicate to opposing counsel and the trial court that he is objecting on the ground that the prosecution has not presented its case for probable cause properly, not that he is merely objecting on the general ground that, given all the facts testified to, there is no probable cause. The objection must be specific in its reference to the defect. He may object on *Harvey* grounds because the fellow officer did not testify, or move to strike the testimony because the fellow officer did not testify. But in some manner he must direct the court's and counsel's attention to the nature of his objection to give an opportunity for the defect to be cured at the trial level. In the absence of such objection, the issue cannot be raised for the first time on appeal.

Successfully over the first hurdle, the Attorney General fails in his attempt to clear the second. This "second hurdle" relates to the initial approach to the automobile; the questioning of its occupants, and the ordering of the occupants from the car. Where there are the requisite suspicious circumstances, such temporary detention, identification questions, and even in some instances ordering persons out of automobiles, are permissible. (*People* v. *Mickelson,* 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658].) In the instant case we do not see the required suspicious circumstances. The information that came from the "informer" was totally devoid of anything that would indicate any criminal activity was involved. One does not reasonably assume that someone would be selling contraband, the possession of which is felonious, in

broad daylight to passersby on the street without other knowledge of fact. The behavior described was consistent with totally innocent activity. (*People* v. *Sanders,* 46 Cal.2d 247 [294 P.2d 10]; *People* v. *Harvey, supra.*) The record provides no testimony indicating that the officers had been investigating narcotics activity in the area. It does not show that the officer had had any experience in narcotics violations detection activities (*People* v. *Wright,* 236 Cal.App.2d 735, 738 [46 Cal.Rptr. 360]), or that he had been looking for someone answering the given description or modus operandi in connection with the sale of contraband, or even that this area was one of high narcotics trafficking. (*People* v. *Brown,* 147 Cal.App.2d 352, 356 [305 P.2d 126].) The officers did not observe any act by defendant or the others in or near the car upon which to justify any suspicion or to corroborate the fact that the trunk had been opened at all. Even the acts allegedly observed by the informant were not re-enacted in the view of the officers. It is clear that the initial detention was illegal. (*People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92 [41 Cal. Rptr. 290, 396 P.2d 706]; *People* v. *Hunt,* 250 Cal.App.2d 311 [58 Cal.Rptr. 385].) It is not necessary to reach the problem of analyzing whether all the information the arresting officer had, including the act of throwing away the keys, gave probable cause for the arrest. This latter act was so tied to the initial illegal police contact that it was clearly the product of the initial illegal stop. No intervening event occurred to remove the initial taint. (*Wong Sun* v. *United States,* 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407]; *People* v. *Haven,* 59 Cal.2d 713 [31 Cal.Rptr. 47, 381 P.2d 927]; *Badillo* v. *Superior Court,* 46 Cal.2d 269 [294 P.2d 23]; *Gascon* v. *Superior Court,* 169 Cal.App.2d 356 [337 P.2d 201].) As such, cases allowing searches of an automobile without a search warrant and not incident to an arrest, but on probable cause are not in point. The determination of this issue makes it unnecessary to consider the car theft theory put forth by the Attorney General to legitimate this search, though this argument appears more of an afterthought than factual.

The judgment is reversed.

KAUS, P. J.—Concurring.

I am not as sure as Justice Stephens that the judgment should be reversed, nor as certain as Justice Aiso that it should be affirmed. The case is, indeed, a very close one.

I disagree with Justice Stephens' opinion to the extent that

it holds that the officers could not even question the occupants of the car. I see nothing illegal in that confrontation. The officers had every right to make an investigation. Their suspicions were quite properly increased when they received an evasive answer concerning the ownership of the car. While this corroborated the telephone informant to some extent, it obviously fell far short of "corroboration of the essential fact, as to whether [the defendant was] now violating the law." (*People* v. *Reeves,* 61 Cal.2d 268, 274 [38 Cal.Rptr. 1, 391 P.2d 393]; see also *People* v. *Gallegos,* 62 Cal.2d 176, 179 [41 Cal.Rptr. 590, 397 P.2d 174].)

Nor do I question the right of the officers to order the occupants of the car onto the sidewalk, although I would feel more comfortable about it if I felt more certain that the police were not, in truth, making an arrest. Certainly they gave *Miranda's* [384 U.S. 436 (16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974)] admonition that the warning of constitutional rights must be given when the suspect has been "deprived of his freedom of action in any significant way" a very broad, though probably prophetic interpretation.[1]

Undoubtedly no right to arrest had ripened before the police witnessed defendant's attempted disposal of the key to the trunk. I do not think that this action, though undoubtedly "furtive," can be permitted to add anything. Most assuredly it did, as a matter of common sense, further arouse the officers' suspicions and heighten their desire to see what was inside the trunk; but, if defendant, instead of trying to make it physically impossible to get inside the trunk, had said that he would not permit a search, there would have been nothing the officers could have done about it except on Justice Aiso's theory, to be discussed later on, that under the circumstances of this case the mobility of the car permitted a search of the trunk without a right to arrest any of its occupants. In *Tompkins* v. *Superior Court,* 59 Cal.2d 65, 67-68 [27 Cal.Rptr. 889, 378 P.2d 113] the defendant did not stand his constitutional ground verbally—he slammed the door in the policeman's face. Yet the court held that his action could not be considered on the subject of probable cause because, if it were, "the right to be free from unreasonable police intrusions would be vitiated by its mere assertion."

Thus I believe that we cannot consider the matter of the

---

[1] The confrontation took place on August 23, 1966, just over two months after *Miranda.*

key. We therefore need not decide whether, if we could do so, it would provide sufficient corroboration of the informant to meet the test as laid down in *Reeves* and *Gallegos*. Thus viewed the case becomes quite analogous to *People* v. *Mickelson*, 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658] where our Supreme Court restated the rule (*People* v. *Blodgett*, 46 Cal.2d 114, 117 [293 P.2d 57]; *People* v. *Martin*, 46 Cal.2d 106, 108 [293 P.2d 52]) that facts short of probable cause to arrest give the police the right to detain for questioning. (Cf. *Terry* v. *Ohio*, 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868].) It is often forgotten, however, that the actual holding in *Mickelson* was that the search of the automobile in which defendant and his companion were riding when they were stopped, exceeded the permissible scope of the investigation. (*Ibid.*, p. 454.)

I now come to Justice Aiso's theory that there was a right to search the trunk, apart from any right to arrest defendant, on the ground that there was probable cause to believe that it contained contraband.

It is apparent that this must be a very special kind of probable cause, something less than would justify an arrest, but more than the ''circumstances short of probable cause to make an arrest'' of which the court spoke in *Mickelson*. If it were the former, the dissent would merely have to say that the search was justified as being incident to the right to arrest. (*People* v. *Cockrell*, 63 Cal.2d 659, 665-667 [47 Cal.Rptr. 788, 408 P.2d 116].) It cannot be the latter, unless we ignore the result of *Mickelson*. Having, both as reader and writer, struggled through dozens of cases which involve the fine distinctions between probable cause and ''circumstances short'' thereof, I confess that I find the notion of a third concept, sandwiched somewhere between the other two, quite appalling.

I recognize that in one reported case, *Perez* v. *Superior Court*, 250 Cal.App.2d 695 [58 Cal.Rptr. 635], it was held that in view of the mobility of automobiles an investigatory or exploratory search could be made ''incident to an equivocal situation which does not suggest the commission of a specific offense.'' I do not think that *Perez* is good law.

*Perez*, like the dissent in the case at bar, relies on *Carroll* v. *United States*, 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790], which makes the obvious distinction between stationary homes and mobile automobiles; but, I believe, that distinction is material only where the difficulty is the absence of a warrant. Our problem is probable cause. More specifically

it is whether there is probable cause to search the trunk of a car for contraband, the possession of which is a felony, where the police have ample reason to believe that the defendant is in knowing, constructive possession of the contents of the trunk, but—*ex hypothesi*—there is insufficient probable cause to arrest him.

To be sure *Carroll* does contain the statement that "[t]he right to search and the validity of the seizure are not dependent on the right to arrest" but this must be read in context.

The court first declared the law as follows: "The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband . . . therein which is being illegally transported." (*Ibid.*, pp. 155-156 [69 L.Ed. pp. 552-553].) It then turns to deal with the argument that the search was illegal because the offense of transporting the particular contraband involved—liquor— could be only a misdemeanor[2] and that no crime had been committed in the officers' presence as far as they knew from their own observation. Hence they had no right to arrest. It is in the context of meeting that argument that the first quoted statement was made. There is not the slightest suggestion in *Carroll* that, when the offense is a felony, probable cause to search is something different than probable cause to arrest.

Of course *Carroll* and its successor, *Brinegar* v. *United States*, 338 U.S. 160 [93 L.Ed. 1879, 69 S.Ct. 1302] refer to the fact that automobiles are not houses and that their mobility makes certain procedures reasonable which would violate the Fourth Amendment were they applied to buildings; but the difference between home and car does not lie in any different standard with respect to probable cause. The difference merely results in a relaxation of the necessity for a warrant. This is clearly brought out in *Brinegar* where the court says: "The *Carroll* decision held that, under the Fourth Amendment, a valid search of a vehicle moving on a public highway may be had without a warrant, but only if probable cause for the search exists. . . ." (*Ibid.*, p. 164 [93 L.Ed. p. 1884].) At this point in its discussion the Supreme Court appended a footnote quoting the following passage from *Carroll*: " 'The Fourth Amendment does not denounce all searches or seizures, but only such as are unreasonable. . . . On reason and authority the true rule is that if the

---

[2]The federal statute involved provided that the first two violations thereof were to be punished as misdemeanors.

search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of the circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid.' *Carroll* v. *United States,* 267 U.S. 132, 147, 149 [69 L.Ed. 543, 549, 45 S.Ct. 280, 39 A.L.R. 790]." (*Ibid.,* p. 164 [93 L.Ed. p. 1884].)[3]

Nor does our own Supreme Court interpret *Carroll* in any other way. The dissent in this case quotes from *People* v. *Terry,* 61 Cal.2d 137, 152-153 [37 Cal.Rptr. 605, 390 P.2d 381]. I will not go into the facts of *Terry* at any length, except to say that there the police had probable cause to search the automobile many times over. The only issue was whether they should have obtained a search warrant. Replying to the contention that they should, the court then adverts to the difference in mobility between buildings and automobiles.

In sum, I do not believe that where the justification for a search of a car is a belief that it contains contraband, the standards of probable cause are any different than those we apply when the contraband is not in the trunk of a car but in the suspect's pocket. In the case at bar, it would be much easier for me to vote for an affirmance on the basis that the police had probable cause to arrest defendant—again, this is a very close question—than on the rationale of the dissent.

There are, of course, situations—see for example *People* v. *Grubb,* 63 Cal.2d 614, 618-619 [47 Cal.Rptr. 772, 408 P.2d 100] and *People* v. *Smith,* 63 Cal.2d 779, 800 [48 Cal.Rptr. 382, 409 P.2d 222]—where an automobile may be searched without a warrant, not incident to a legal arrest and without probable cause to believe that it contains contraband. (Cf. *People* v. *Burke,* 61 Cal.2d 575, 578 [39 Cal.Rptr. 531, 394 P.2d 67].) This case does not involve any of the recognized exceptions to the general rule.

I regret that for the reasons indicated I must concur in the reversal of the conviction of an obviously guilty defendant. I

---

[3]Immediately preceding the passage quoted the *Brinegar* court says: "The crucial question is whether there was probable cause for Brinegar's arrest, in the light of prior adjudications on this problem, more particularly *Carroll* v. *United States,* 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790], which on its face most closely approximates the situation presented here." (*Ibid.,* p. 164 [93 L.Ed. p. 1884].) It seems to me that this sentence alone makes untenable any contention that a lesser degree of probable cause, than is needed to arrest, will justify a search.

regret it particularly since the police conduct, though illegal, was very near the borderline and reasonable men may well differ about the proper location of the border. The trouble with this case started at the very beginning of the investigation. I realize it is dangerous business for courts to assume the expertise of another profession, but it seems rather obvious to me that one way not to investigate the activities of a person who is selling what may be contraband to all comers is to arrive at the scene with two uniformed police officers in a police car.

AISO, J. pro tem.*—I respectfully dissent. Under the circumstances reflected by the record, I do not feel that the trial court erred in rejecting defendant's claim that the marijuana was discovered through a violation of his constitutional rights against unreasonable searches and seizures.

In the main, the facts are narrated in the court's opinion. Since the case is a close one which is "touch and go" upon the facts, I add a few other facts reflected in the reporter's transcript. Officer Warren and his partner reached the location about 7 p.m. of August 23, 1966. He found a male Negro juvenile seated behind the steering wheel on the front seat, the defendant seated in the middle, and a woman seated on the right-hand passenger side. The officer asked the apparent driver who owned the car. The juvenile replied that he did not know. The officer asked defendant where the keys to the car were. Defendant replied that he did not know. Upon the officer's request, he gave the officer permission to check the car for the keys. The officer did not ask the other two persons for the keys, because he was interested primarily in the defendant, whose description matched that of the person reported as using the keys to open the trunk and obtaining the cellophane-wrapped packages. The officer checked the ignition switch area, but no keys were there. Then as he was walking around the rear of the vehicle to get to the other side, he saw the defendant throw away a set of keys into the bushes. The officer retrieved the keys and used one to open the trunk. In so doing, he observed several wax-paper bags wrapped with rubber bands and containing green, leafy substance resembling marijuana. It was upon this discovery that the officer arrested the defendant for possession of marijuana for sale.

---

*Assigned by the Chairman of the Judicial Council.

Although not explicitly approved in the recent case of *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], the implicit *ratio decidendi* justifying the "frisk" is a recognition that a *"Mickelson"* type of stop and brief interrogation (*People* v. *Mickelson* (1963) 59 Cal.2d 448, 452 [30 Cal.Rptr. 18, 380 P.2d 658]) is constitutionally permissible.

The criterion to be applied in this case, in my opinion, is whether at the time the officer opened the trunk, he had reasonable and probable cause to believe that there was contraband in the trunk of the car.

We are not here concerned with a search of the person or of a home, but of an automobile parked upon a public highway. The standard of reasonableness to be applied to a search of a vehicle is not the same standard of reasonableness to be applied in the search of a home. (*People* v. *Webb* (1967) 66 Cal.2d 107, 114-115 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708].) *Castenada* v. *Superior Court* (1963) 59 Cal.2d 439 [30 Cal.Rptr. 1, 380 P.2d 641], cited by the court is not here apposite. Our Supreme Court in the later case of *People* v. *Terry* (1964) 61 Cal.2d 137, 152-153 [37 Cal.Rptr. 605, 390 P.2d 381], stated: "If a police officer has probable cause to believe that an automobile contains contraband he need not obtain a search warrant in order to search it . . . [T]his situation has not been affected by recent cases holding that he must obtain a warrant to search a building even though he has probable cause for such investigation. (*People* v. *Edgar* (1963) 60 Cal.2d 171 [32 Cal.Rptr. 41, 383 P.2d 449]; *Castenada* v. *Superior Court* (1963) 59 Cal.2d 439, 443 [30 Cal.Rptr. 1, 380 P.2d 641].) The difference in treatment between buildings and automobiles historically has been justified by the mobility of the automobile and the greater need for protection of the fundamental rights of privacy that attach to a man's home. (*Chapman* v. *United States* (1961) 365 U.S. 610 [5 L.Ed.2d 828, 81 S.Ct. 776]; *Carroll* v. *United States* (1924) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790].)"

The overall factual pattern here resembles in broad aspects that of *Willson* v. *Superior Court* (1956) 46 Cal.2d 291, 294-296 [294 P.2d 36]. There anonymous information with slight corroboration based upon personal observation was held adequate to constitute reasonable and probable cause for arrest. (See also *People* v. *Macknic* (1967) 257 Cal.App.2d 370, 373-374 [64 Cal.Rptr. 833].) Here anonymous information, interpreted by the officer in the light of his experience as

a policeman, was corroborated by evasive replies to questions, the deceptive position of the defendant seated in the middle of the front seat, and the clinching act of the defendant throwing away keys, which he had previously disclaimed knowing about. (*People* v. *Talley* (1967) 65 Cal.2d 830, 836-837 [56 Cal.Rptr. 492, 423 P.2d 564].)

The information relayed to Officer Warren and his partner by their watch commander was concededly anonymous information. It was a telephone report received from an unknown citizen residing in the area of 1300 Fifth Avenue that there was a blue and white vehicle parked in that block with three persons in it. A male Negro in a white T-shirt was observed getting out of the car, holding conversations with passersby on the sidewalk, opening the trunk of the vehicle, removing cellophane-wrapped packages therefrom, giving it to persons with whom he had conversed, and accepting money in exchange for the package. Although anonymous, it was information which the officer believed required checking out.

The questions put to Officer Warren and his answers were:

"Q. Well, sir, did this information have any significance to you when it was relayed to you by your watch commander?

"A. Yes.

"Q. What significance did it have to you?

"A. It indicated to me there may be possibly a sale of narcotics from a vehicle parked on the street.

"Q. Proceeding upon this information did you do something?

"A. Yes. I proceeded to the location."

While Officer Warren was then assigned to the patrol division of the Wilshire station and no foundational questions were asked regarding his expertise concerning narcotics, he did testify that he had four and a half years' service as a Los Angeles police officer. "In evaluating the total situation that confront[s] [officers] . . . we may consider their training and experience as police officers (*People* v. *Wozniak*, 235 Cal.App.2d 243, 250 [45 Cal.Rptr. 222]) and their expertise in the area of detecting suspicious circumstances which, to an ordinary individual, might appear innocent. [Citations.]" (*People* v. *Beasley* (1967) 250 Cal.App.2d 71, 79 [58 Cal. Rptr. 485]; *accord*: *People* v. *Machel* (1965) 234 Cal.App.2d 37, 48 [44 Cal.Rptr. 126], cert. den. 382 U.S. 839 [15 L.Ed.2d 81, 86 S.Ct. 88]; *People* v. *Cowman* (1963) 223 Cal.App.2d 109, 117-118 [35 Cal.Rptr. 528].)

In *Terry* v. *Ohio* (1968) *supra*, 392 U.S. 1, 21-22 [20

L.Ed.2d 889, 906, 88 S.Ct. 1868, 1880], Chief Justice Warren, speaking for the United States Supreme Court, epitomizes the established rules governing a judicial inquiry thusly: ''[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? . . . the . . . officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts reasonably warrant that intrusion. . . . [his] inarticulate hunches . . . [and] subjective good faith . . . [are] not enough.'' Nevertheless, the case holding recognizes that recondite police reactions to facts which appear innocent to the unitiated as being criminal is a ponderable factor if the officer can articulate the basis of his reaction so that objective judicial assessment can be made. After assessing the facts narrated by the police witness in that case, the Chief Justice wrote, ''It would have been poor police work indeed for an officer of 30 years experience in the detection of thievery from stores in this same neighborhood to have failed to investigate this behavior further.'' (392 U.S. 1, 23 [20 L.Ed.2d 889, 907, 88 S.Ct. 1868, 1881].)

It is true that in this case, what the watch commander's relayed report meant to Officer Warren is in the form of a conclusion. But it is also an opinion of the officer standing unchallenged on the record. No objection to the form of answer was made. No request to *voir dire* the officer for the basis of that opinion appears. No cross-examination to the point was conducted. No motion to strike was made. Conclusions not objected to can constitute an adequate preliminary foundation for the admission of evidence whose admissibility has been questioned on constitutional grounds. (Cf. *People* v. *Berg* (1929) 96 Cal.App. 430, 441 [274 P. 433]; *People* v. *Ramsey* (1948) 83 Cal.App.2d 707, 721-722 [189 P.2d 802], overruled on other grounds in *People* v. *Brown* (1958) 49 Cal.2d 577, 584 [320 P.2d 5].) Moreover, ''[i]t is settled law that incompetent testimony, such as hearsay *or conclusion,* if received without objection takes on the attributes of competent proof when considered upon the question of sufficiency of the evidence to support a finding.'' (Italics added.) (*Berry* v. *Chrome Crankshaft Co.* (1958) 159 Cal.App.2d 549, 552 [324 P.2d 70].)

Validity of the anonymous information as construed by the officer in the light of his experience was corroborated amply by what transpired at the scene. The answer of the juvenile

seated behind the steering wheel was evasive. Defendant's being seated in the middle of the front seat can be construed as an attempt to mislead the officer into the belief that he was not the one getting in and out of the car. Defendant lied about his knowledge as to the whereabouts of the keys to the car. Finally, the throwing away of the keys was the strongest kind of furtive action, indicating a consciousness that contraband was in the trunk. Whether there are other possible constructions which can be placed upon these events at the scene is immaterial; it is adequate that the construction which the officer placed upon them was a reasonable construction, entertainable in good faith. The trial court accepted this construction. With this corroborative evidence, there was reasonable and probable cause to believe that there was contraband in the trunk of the car. (*Carroll* v. *United States* (1924) *supra,* 267 U.S. 132, 155-156 [69 L.Ed. 543, 552-553]; *Perez* v. *Superior Court* (1967) 250 Cal.App.2d 695 [58 Cal.Rptr. 635]; *People* v. *Brajevich* (1959) 174 Cal.App.2d 438 [344 P.2d 815].) Had the officer stopped his investigation upon retrieving the keys which defendant had tossed away, the officer would have been derelict in his duties; the contraband would have vanished in a moving car.

The marijuana was thus discovered as the result of a reasonable search for contraband; reasonable and probable cause for the arrest then developed; the arrest without warrant of arrest was legalized.

I would affirm the judgment and dismiss the attempted appeal from the nonappealable order denying the motion for new trial. (*People* v. *King* (1963) 60 Cal.2d 308, 309 [32 Cal.Rptr. 825, 384 P.2d 153]; Witkin, Cal. Criminal Procedure (1963), p. 649.)

A petition for a rehearing was denied August 5, 1968, and respondent's petition for a hearing by the Supreme Court was denied October 23, 1968. McComb, J., Mosk, J., and Burke, J., were of the opinion that the petition should be granted.