[Crim. No. 3790. First Dist., Div. One. Dec. 7, 1960.]

THE PEOPLE, Respondent, v. GRANT MONROE
WILLIAMS, Appellant.

Lynn Carman, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, and Miriam E. Wolff, Deputy Attorney General, for Respondent.

TOBRINER, J.—Found guilty of an attempt to violate section 459 of the Penal Code (attempted burglary), appellant predicates an appeal upon the grounds that the trial court, in admitting three transcribed confessions of appellant erred in that (1) before deciding whether to admit the confessions into evidence, the court should have afforded appellant the opportunity to testify as to the alleged coercive circumstances under which the confessions were obtained, and (2) the confessions were in fact the product of coercion. While the cases support appellant's first contention that the court should have heard his testimony before admitting the confessions, we do not find such error prejudicial. As to his second point, the issue of the claimed involuntariness of the confessions basically composes a question of fact which the jury decided against appellant. As a consequence, and for the reasons more fully hereinafter described, we believe the judgment should be sustained.

Appellant and his codefendant, Chatfield, were charged in an amended information with violation of section 459 of the Penal Code. Williams was also charged with, and admitted, six prior felonies: breaking and entering with intent to commit a felony in the State of Florida; assault with a deadly weapon in the State of Idaho; in California, one count of violation of section 211 of the Penal Code (robbery in the first degree), and another count of violation of that section (attempted robbery in the first degree); violation of section 107 of the Penal Code (escape); violation of section 211 of the Penal Code (robbery in the first degree). In the instant case the jury found appellant guilty of attempted burglary in violation of section 459 of the Penal Code but failed by a division of eleven to one to reach a verdict on Chatfield.

The case developed from the following factual background. At about 9 p. m. on September 7, 1959, Officer Maddox of the Concord Police Department, while on routine patrol, came upon an attempted burglary, apparently in progress, demonstrated by a crowbar jammed between the rear door and the doorjamb of Andy's Market. The market contained a safe visible from the front sidewalk. Shortly after Officer Maddox

began his search of the neighborhood for suspicious individuals, two witnesses, Frank McClain and William Vaughn, saw two men in the area, one of whom was later identified as appellant's codefendant, Chatfield.

McClain, a resident of the house across the alley from the market, testified that as he was watching television he observed two strangers crossing his property. He followed one of them; this man "doublebacked on his tracks," asked a question, and then "took off in a hurry in the opposite direction." McClain identified the man as Chatfield. McClain's stepson, Vaughn, who also had been viewing television with McClain, saw the two individuals, followed the second, but lost him. Vaughn saw the car in which one of the strangers departed; it was a tan or maroon-colored 1949 or 1950 Studebaker. A Mrs. Betty Barrett, a housewife who lived about two doors from the market, stated that at about 9 p.m. she saw a dirty tan-colored Studebaker slowly making about three trips by the front of her house. Somewhat later, upon being asked by the police to inspect a tan-colored Studebaker at Sid's, a nearby restaurant, she identified it as the same car.

Officer Tamborski, receiving Maddox' report of the attempted burglary, left police headquarters, went to the market to search the area and apprehended appellant as he drove the tan Studebaker into Sid's parking lot. The officer found in this car two pistols, certain heavy-duty tools suitable for burglary, and, in the glove compartment, a wallet of Chatfield's, with identifying information and money. Obtaining a description of Chatfield by radio broadcast, Maddox apprehended him in the immediate area.

Appellant signed three confessions as to the events of the evening. On the night of his arrest appellant gave his first statement, which implicated Chatfield. Chatfield initially refused any statement. After being interviewed on September 10, 1959, by Walter Gordon, their parole officer, both men gave confessions to the Concord officers. On September 11, 1959, Williams and Chatfield, upon interrogation by a deputy district attorney and in the presence of a shorthand reporter gave the third confessions.

At the trial respondent submitted the testimony of three officers in order to establish a preliminary showing as to the voluntariness of the confessions, and appellant further examined them on *voir dire*. Lieutenant Huddleston of the police department testified that he interviewed appellant at

the police station after his arrest. On *voir dire* examination, he attested that he made no promises or threats to appellant during the time he was with him. Sergeant Dupoui, present on September 10th when the appellant made his second statement, testified that he extended no promises to appellant. Dupoui also stated that on September 11th he was in the district attorney's office immediately prior to appellant's rendition of his third statement; that Dupoui did not tender any promise to appellant nor did anyone else do so. Officer Freitas testified that when appellant was questioned at the police station following his arrest, appellant admitted taking part in the attempted burglary and promised to give a statement to a court reporter regarding the event. Freitas denied making or hearing any promises or inducements to appellant.

After establishing this preliminary showing as to the voluntariness of appellant's confessions, the prosecution offered them in evidence. Defense counsel objected and sought to put appellant on the stand to testify as to his version of the circumstances of the confessions, but the court denied him this opportunity. Instead, the court admitted the confessions; the prosecutor read them to the jury; the court subsequently gave a proper admonition to the jury that the confessions should be disregarded unless the jury concluded that the confessions were voluntarily rendered.

Both Chatfield and appellant ultimately testified on their own behalf. Chatfield, who had made no statement immediately following his arrest, but had confessed on September 10th and 11th, testified that Gordon had threatened to give an unfavorable report to the parole board if Chatfield did not cooperate with the police but had said that if he did cooperate "it would be in my best interests. . . ." Chatfield's account of his conduct on the evening of the crime was that he had been with Williams earlier, but had come home before 9 o'clock. Later, remembering he had left his wallet in appellant's car, he had walked into Concord to find appellant. He had spoken to McClain; Officer Maddox had then arrested him.

Appellant testified that he had made his first confession only after Officer Freitas had threatened to charge him with "all of the unsolved crimes that had been committed around Concord" since his release from the penitentiary; that Freitas had promised that if appellant did confess Freitas would book him only for the misdemeanor of malicious mischief and would recommend reinstatement of parole. Appellant testified that the officers told Chatfield and himself that their accounts had

better coincide; the officers themselves had outlined a story for narration by Chatfield and appellant. According to appellant, Gordon had also told the two men to agree on a story. To the contrary, Gordon unequivocally testified that he admonished them to give "the true facts" and that he neither promised them anything nor threatened them.

As we shall point out, we believe that the trial court followed an erroneous procedure in the introduction into evidence of these confessions; we do not, however, find the error prejudicial.

The court erred in refusing to permit appellant to show, prior to the court's decision to admit them, that the confessions resulted from coercion. Outlining the procedural steps for admission of confessions, the Supreme Court in *People* v. *Gonzales* (1944), 24 Cal.2d 870 [151 P.2d 251], states: "At the time the confession is offered, it is incumbent on the prosecution to lay the foundation for its introduction by preliminary proof showing that it was freely and voluntarily made. (*People* v. *Soto*, 49 Cal. 67; *People* v. *Miller*, 135 Cal. 69 [67 P. 12].) Before the confession is received, however, the defendant if he requests it must be accorded the opportunity to introduce evidence to overcome the prima facie showing, and if incrimination is dependent upon the confession a refusal of the court to permit such opportunity may constitute prejudicial error. [Citations.]" (P. 876.) If the evidence as to voluntariness conflicts, the trial court initially resolves the issue; if the court concludes the confession forced, the court withholds it from the jury; if the court finds it voluntary the court may admit it into evidence and repose in the jury the final determination of its voluntariness. (Witkin, California Evidence, § 251, p. 285.)

The decisions in this state hold, however, that even though the trial court should fail to consider a defendant's testimony prior to ruling upon the voluntariness of the confession, the procedure is not prejudicial if a review of the evidence as to the confession discloses that the trial judge would nevertheless have admitted the confession if he had first heard defendant's version of it.

In *People* v. *Appleton* (1957), 152 Cal.App.2d 240 [313 P.2d 154], a case involving conviction for murder in the first degree, the court faced a situation not unlike that in the instant case. Defendant admitted to the officer he "did it." "Prior to the introduction in evidence of the testimony concerning such confession, counsel for the defendant requested

permission to introduce evidence to rebut the prima facie showing that the statements of the defendant were made freely and voluntarily. The trial court refused to permit the introduction of such evidence at the time, stating that counsel for defendant could introduce such evidence after the confession had been received." (P. 243.) Despite the error of the trial court, the appellate tribunal ruled that in the absence of prejudice the cause should not be reversed, saying: "Although the trial court's ruling was erroneous, we are nevertheless of the opinion, after a thorough examination of all the evidence in this case, and particularly defendant's explanation of the circumstances under which the statement was given, that no trial judge would have excluded the testimony as to the statement or confession had he heard the defendant's testimony before ruling upon its admissibility." (P. 245.)

A similar situation developed in the earlier case of *People* v. *Eli* (1933), 131 Cal.App. 482 [21 P.2d 654]. When the prosecution offered defendant Eli's confession, "counsel for defendants objected on the ground that it was not free and voluntary, and offered to introduce testimony in support of this contention." (P. 483.) The court "declined the offer." (P. 483.) But, in this case, as here, defendant "was permitted to testify at considerable length concerning the circumstances under which he made the statement . . ." (p. 484); "that he was told it would be better for him to plead guilty and that he was continually questioned for a considerable period of time." (P. 485.) In language similar to *Appleton,* the court states: "After thorough examination of the case, including the evidence, and particularly appellant Eli's explanation of the circumstances under which his statement was given, we are of the opinion that no trial judge would have excluded the statement or confession had he heard appellant's testimony before ruling upon its admissibility." (P. 485.)

The case of *People* v. *Voiler* (1934), 2 Cal.App.2d 724 [38 P.2d 833], reaches the same result. "The trial court's error in not admitting evidence offered on *voir dire* in opposition to the statement before ruling on its admissibility does not appear to have been prejudicial." (P. 727.)

The corrollary situation, in which the appellate court did not find nonprejudicial the trial court's failure to consider appellant's testimony on *voir dire* is exhibited by *People* v. *Columbus* (1920), 49 Cal.App. 761 [194 P. 288]. There the court held: "After a most careful consideration of the entire cause, including the evidence, we are unable to determine whether

the trial judge would or would not have excluded the confession had he heard defendant's testimony before ruling upon its admissibility; nor are we able to say whether the jury would or would not have convicted the defendant if the erroneously admitted confession had been excluded from their consideration. This being so, we do not feel that section 4½ can aid the judgment.'' (P. 763.) (To the same effect: *People* v. *Gibson* (1915), 28 Cal.App. 334 [152 P. 316].)

We do not believe that *People* v. *Mitchell* (1926), 80 Cal. App. 252 [251 P. 582] or *People* v. *Shaffer* (1927), 81 Cal.App. 752 [254 P. 666], which respondent cites for the proposition that the confession may be introduced ''without allowing the defendant to place other witnesses on the stand'' to show claimed involuntariness, establish a different rule than that set forth above. It does not appear that counsel for defendant in *Shaffer* sought to introduce testimony of the involuntariness of the confession prior to its admission. Only later, in the cross-examination of one of the officers did he do so, and at *that* point the trial court refused to permit it. The appellate court upheld the ruling and pointed out that even if it were erroneous, it was not prejudicial.

As to *People* v. *Mitchell, supra,* 80 Cal.App. 252, that portion of the opinion which states that after the prosecution established a prima facie case for the admission of the confession, ''it was within the sound discretion of the court to say whether it would interrupt the regular course of the trial and hear the defendants' witnesses, or proceed as it did in this instance'' (p. 256), does not accord with the rule of the cases above cited. Since the trial court should admit on *voir dire* any evidence offered to prove the involuntary nature of the confession, we do not believe that *Mitchell* states the proper procedure.

In the instant case we cannot find a prejudicial consequence from the court's admission of the confessions, without prior admission of the defense testimony, in the face of the fact that such testimony, as we shall point out, would have led to no different conclusion. A careful review of this entire record does not sustain the conclusion that a trial judge, having before him the prima facie showing established at *voir dire,* the officers' and parole officer's testimony that they neither threatened appellant nor offered him any inducements, and the subsequent testimony of Chatfield and appellant, himself, would have found the confessions involuntary. We point to the following portions of the record which typify the inconclusiveness of appellant's showing:

(1) Appellant testified that despite the length and detail of three confessions, Officer Freitas "told me what to say," although the officer did not write it out: "[h]e just give [*sic*] a verbal statement." When pressed for an account of what the officer was supposed to have "told" appellant, he answered, "He told me that I had been driving around through the area and that I had let George off, and *a few things* of that nature, what has been, so to speak, brought out in your prosecution, that is what he told me to tell in my original statement." (Emphasis added.) The prosecutor observed: "Well, you told us a lot more than that in these statements," asking, "Are you trying to say now that everything that you said . . . about your activities after you left the Concord, or the Paddock Bowl, is something that Mr. Freitas told you to tell me?" Appellant doggedly answered, "That is right." A trial court could hardly exclude a confession upon the basis of testimony of this nature.

(2) Appellant's testimony on cross-examination that the officers "figured out," so that appellant could parrot them back, the many and minute details of appellant's conduct, as narrated in the confessions, on its face is extremely improbable.

(3) Appellant's testimony that Officer Freitas, in the sole presence of the two of them, threatened to charge appellant with "[*a*]*ny and all* of the unsolved crimes that had been committed around Concord in the time that I'd been out" of the penitentiary is inherently questionable and, moreover, meets refutation in Freitas' testimony. (Emphasis added.)

(4) The threats and inducements allegedly made by parole officer Gordon could not have affected the first confession since appellant gave it before he talked to Gordon. Furthermore, Gordon testified that he explained that he could offer no immunity from punishment because his report "couldn't be a favorable report," due to appellant's "having a gun in the car, which is a violation of parole, [and] associating with another prisoner. . . ." Gordon pointed out to Chatfield and appellant that there were a "lot of discrepancies" in the confessions; "I told them to tell the truth, at least be truthful with themselves, anyway." Obviously an exhortation to tell the truth, not coupled with coercion or inducement, does not render the confessions involuntary. (*People* v. *O'Brien* (1921), 53 Cal.App. 754 [200 P. 766].) In the face of Gordon's testimony a trial court could not have accepted the highly improbable testimony of appellant.

We do not believe that the trial court could have reached

a different decision as to the admissibility of the confessions upon the basis of the inconclusive testimony of Chatfield and appellant. The classic and invariable formula for defense against the admission of a confession lies in the alleged involuntary rendition. The trial court must therefore test this defense, and on *voir dire* it should examine all the proffered testimony as to the confession before reaching a decision as to its admissibility. The court's failure to do so here presents our problem. But we should not reverse if the testimony subsequently admitted could have made no difference in the ruling. The appellant's testimony here is so weak, and so much of it is inherently improbable, that we cannot rule that it could have made the difference.

While we are sensitive to the danger inherent in the admission of coerced confessions (*People* v. *Trout* (1960), 54 Cal.2d 576 [6 Cal.Rptr. 759, 354 P.2d 231]), and while we believe that there clearly rests with "the trial judge . . . [the] primary obligation to pass upon issues of fact determinative of a confession's admissibility" (Maguire, Evidence of Guilt (1959, Little, Brown and Company), p. 149); we cannot conclude that the procedure followed here prejudiced appellant or that we must reverse lest we encourage such erroneous procedure in future trials. It is true, of course, that the defense testimony came in after, rather than before, the ruling on admissibility. The chronological order of admitting the testimony, however, should not be determinative, as the cited cases demonstrate, unless it worked prejudice, and we have found none here. It is true, too, that appellant took the stand in the course of the defense case, and then submitted the proof of the involuntariness of the confessions; appellant should have been permitted to do so earlier on the preliminary examination. But since the testimony would have been the same, the later submission could realistically effectuate no prejudice. Finally, appellant's argument that affirmance would encourage erroneous trial court procedure applies equally to all cases in which lack of prejudice saves erroneous trial court procedure. We do not believe that proper procedure in this instance is so sacrosanct that it escapes the general rules; in any event we doubt that trial courts will be encouraged to commit error merely because we find no prejudice on this particular record.

 Appellant's second point is that the confessions were in fact the product of coercion. Appellant argues that although the jury ordinarily resolves questions of fact and there-

fore would ultimately determine if the confessions were procured by coercion, nevertheless the jury, here, in holding the confessions were voluntary, must have relied upon incorrect standards of judgment. Appellant states that "undisputed facts demonstrate plainly that (a) psychological coercion produced this September 10 confession; and (b) the same psychological coercion plus illegal detention produced the same confession."

The first argument rests upon the alleged attempt of the parole officer "to use the power of his lawful relationship with Williams . . . to wring by threats a confession from Williams. . . ." But this contention neither rests upon "undisputed facts," since Gordon's testimony, *supra*, states the antithesis, nor does it escape the rule that such matters are for the jury. (*People* v. *Burwell* (1955), 44 Cal.2d 16 [279 P.2d 744]; *People* v. *Mehaffey* (1948), 32 Cal.2d 535, 554 [197 P.2d 12]; *People* v. *Fox* (1944), 25 Cal.2d 330, 340 [153 P.2d 729].)

As to the alleged illegal detention operating as a factor in producing the confessions, the cases hold that a confession does not become involuntary because it is procured during a period of illegal detention. (*People* v. *Tipton* (1957), 48 Cal. 2d 389, 394 [309 P.2d 813]; *Rogers* v. *Superior Court* (1955), 46 Cal.2d 3, 10 [291 P.2d 929]; *People* v. *Soto* (1957), 155 Cal.App.2d 344, 346 [317 P.2d 1005].)

We conclude that the error of the trial court in refusing to hear the defense testimony prior to admitting the confessions did not, in view of the nature of such testimony, work any prejudice against appellant.

We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied January 6, 1961.