[Crim. No. 4521. First Dist., Div. Two. Mar. 31, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES GALLOWAY, Defendant and Appellant.

---

Matthew M. Fishgold and Paul Briefer for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Edward P. O'Brien and Charles W. Rumph, Deputy Attorneys General, for Plaintiff and Respondent.

AGEE, J.—On this appeal from a judgment of conviction of second degree burglary following a nonjury trial, the only error complained of is that there is a variance between the accusatory pleading and the evidence as to the site of the offense and that such variance materially prejudiced defendant's defense and prevented him from having a fair trial.

The information alleges that appellant and two others "did enter the paint storage shed of D. Zelinsky & Sons, located at 165 Grove Street [San Francisco] with intent to commit theft." All of the proof adduced at the preliminary hearing

and the subsequent trial was directed to a paint storage shed of D. Zelinsky & Sons located in the 1400 block on Buchanan Street in San Francisco.

It was near this shed where appellant and his pickup truck were "stalled," at 1 o'clock in the morning and with four cans of the stolen paint on the truck bed, when the police officers approached in a patrol car.

Appellant has had the same attorney throughout the proceedings herein. Both sat through the preliminary hearing and heard the testimony as to the location of the shed which had been broken into and the paint removed therefrom. They admit that the evidence at the trial "was substantially the same as that of the preliminary hearing." The variance now complained of was never raised in any of the proceedings below and the record clearly shows that defendant conducted his defense and testified in his own behalf as though the storage shed he was charged with burglarizing was the one located in the 1400 block on Buchanan Street.

Appellant's brief suggests that we take judicial notice that the business address of D. Zelinsky & Sons is 165 Grove Street and that this is over one-half mile from the 1400 block on Buchanan Street. We accept this as a fact and add the further suggestion that this is the probable cause of the incorrect address typed in the information.

In our opinion there is nothing in the record which supports a conclusion that appellant was misled in preparing his defense. This is the basic concern in determining the materiality of a variance between the accusatory pleading and the proof. (*People* v. *Williams,* 27 Cal.2d 220, 226 [163 P.2d 692]; *People* v. *Smith,* 50 Cal.2d 149, 152 [323 P.2d 435].)

In *Smith,* where the variance between the information and the proof as to the date of the offense charged was one month, the Supreme Court commented that "Defendant was not misled in making his defense, for he knew from the testimony given at the preliminary hearing that the date of the alleged offense was March 8, 1956 . . . ." We do not believe that appellant or his counsel was ever under the misapprehension that appellant was being tried for burglarizing the Zelinsky premises on *Grove Street.*

*Dorado.* Although appellant has not raised the point, we feel that the possible effect of *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], upon the admissibility of oral statements made by appellant following his arrest should be discussed.

When Officers Klapp and Watson saw a truck without lights pull away from the storage shed on Buchanan Street they pursued it in their marked patrol car and stopped it on Ellis Street. Officer Klapp observed four unopened cans of paint on the open bed of the truck. He went back to the shed and found that it had been broken into. He correctly concluded from his observations, as the evidence at the trial demonstrated, that the paint on the truck had been stolen from the shed.

Klapp's testimony pertinent to the *Dorado* question is as follows: "Then I returned to the scene where the Defendants [appellant, Davidson and Robertson] were being detained and at that time we placed them under arrest. . . . We remained at the scene and questioned the Defendants for a few moments. . . . Well, we attempted to question all 3 of them. However, Mr. Galloway [appellant] was the only one of the 3 who had responded to the questions. . . . I inquired regarding his possession of the paint. He stated that the paint wasn't his property, that he had taken the other 2 parties, Mr. Davidson and Mr. Robertson, to the paint shed, that they had obtained the paint and placed it in his truck. That he had only driven to the scene, he had no part in the—what he termed the theft of the paint."

In response to the question as to whether there was any further conversation, the witness answered: "Not at that time. They were conveyed to the Northern Station to be booked."

At the Northern Station, appellant told Klapp that there was additional paint in a truck parked in the 100 block on Webster Street; that this paint had been shown him earlier by Davidson and Robertson. (Officers followed the lead and found numerous cans of the stolen paint in the cab of this truck.)

Inspector Furlong's testimony as to a conversation with appellant later that same day is as follows: "He stated that he had met the other two defendants around McAllister and Fillmore Street and they informed him that they wanted to buy some paint, where they could get ahold of some paint, and Mr. Galloway said he wasn't interested but maybe his boss would be interested in the paint, and that they went down and the defendant Shorty Davidson went up to a house and come out with some paint, put it in the back of his truck, and that's more or less the point of the conversation."

Appellant testified in his own behalf. He admitted two prior

felony convictions. He did not deny the conversation with Klapp at the Northern Station nor did he deny the conversation with Inspector Furlong. He did deny, however, having any conversation with Klapp about paint at the scene of the arrest.

His testimony in this respect is as follows: "He [Klapp] never asked me about any paint or anything at that scene there. What he ask me, I asked him why was he stopping me and he said people had been missing stuff in their redevelopment area and he wanted to make a check at the Police hall or Police station to see if any warrants or anything was out for any of us in the car." (The other two defendants were also ex-felons.)

We are concerned here only with the statement made by appellant at the scene of his arrest, since his later statements to Klapp and to Furlong are substantially consistent with his testimony at the trial.

The statement under discussion is similar to one made by the defendant in *Escobedo* v. *Illinois*, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], in that both are admissions of some knowledge of the crime involved.

In *Escobedo*, defendant said to a fellow suspect, in the presence of police, " ' "I didn't shoot Manuel, you did it." ' " In the instant case, appellant said to Officer Klapp in effect, "I didn't take the paint from the shed, Davidson and Robertson did."

In *Escobedo*, the interrogation was pursued thereafter to the point where Escobedo finally made what our Supreme Court in *Dorado* termed "a full confession." (P. 346.)

We, of course, are not faced with a confession nor can the circumstances under which Officer Klapp "inquired regarding his [appellant's] possession of the paint" be likened to the intensive interrogation process described in *Escobedo* and *Dorado*.

The holding in *Dorado* was summarized by our Supreme Court in *In re Lopez*, 62 Cal.2d 368, 371-372 [42 Cal. Rptr. 188, 398 P.2d 380] as follows: "We have held today [in *Dorado*] . . . that a defendant's confession could not properly be introduced into evidence if (1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed

defendant of his right to counsel or of his absolute right to remain silent, and no evidence established that he had waived these rights.''

Elements (1), (2) and (4) are present here. We are in doubt as to element (3) being shown, because of the nature of Klapp's questioning, but we need not discuss this question in view of our conclusion as stated below.

Our Supreme Court, in *Dorado*, clearly indicated that we are not required to reverse a conviction in every case wherein a defendant's statement has been obtained in violation of his constitutional rights to counsel and to remain silent.

We quote from *Dorado*: ''Finally, we cannot dispose of the introduction of the illegally obtained confession upon the ground that it constituted merely harmless error. Although *under some circumstances* the introduction into evidence of *statements* obtained from a defendant during police interrogation in violation of his right to counsel and his right to remain silent may constitute *harmless error,* we are convinced that the error is necessarily prejudicial when the statements are confessions.'' (P. 368.) (Italics added.)

The evidence of appellant's guilt in the instant case is overwhelming. Even his counsel's argument to us, that it was merely ''a coincidence that appellant's truck should have stalled on Buchanan Street near where the paint had been stolen,'' is almost incredible.

We think that the circumstances of this case are such that the admission into evidence of appellant's statements constituted ''harmless error'' within the meaning of the *Dorado* opinion.

Judgment affirmed and appeal from order denying motion for new trial dismissed, it being a nonappealable order. (Pen. Code, § 1237, subd. 1.)

Shoemaker, P. J., and Taylor, J., concurred.