[Crim. No. 4408. First Dist., Div. One. June 23, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. HENRY
WOZNIAK, Defendant and Appellant.

244

Phyllis Kasler, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Edward P. O'Brien and Michael J. Phelan, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, J.*—Defendant appeals from a judgment of conviction, after a jury trial, of violation of section 459, Penal Code (burglary).[1]

### QUESTIONS PRESENTED

1. Alleged unlawful search.

2a. Admissibility of defendant's statements. 2b. Applicability of *People* v. *Dorado.*

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]Defendant denied suffering three prior convictions two of burglary and one of grand theft. The jury found the charges to be true.

3. Jury's hearing evidence as to the admissibility of the evidence obtained by search and seizure.

4. Failure to appoint advisory counsel.

5. Alleged prejudicial misconduct of district attorney.

6. Alleged prejudicial misconduct of trial judge.

7. Alleged error in instruction.

8. Effect of the comment of the district attorney and the instruction of the court concerning defendant's failure to testify. (*Griffin* v. *California*.)

## STATEMENT OF FACTS

In the early morning of December 19, 1962, Messrs. Curtis and Glass, having worked late in San Francisco, decided to remain there overnight rather than to return to their homes some miles distant. They occupied room 744, on the 7th floor, of the Sutter Hotel and retired sometime between 1:15 and 1:30 in the morning. The door to the room was closed but it is uncertain whether or not it was locked. At approximately 2:30 a.m. the two men were awakened. They noted that the door was open and light was streaming into the room from the hallway. Both men got up and found certain property missing: Mr. Curtis' money clip containing about $77 in currency, Mr. Glass' suit containing a pocket secretary and a wallet containing about $5.00, and Mr. Glass' wrist watch.

After discovering the loss, the men reported it to the hotel desk. Approximately one-half hour later, two police officers arrived at the victims' room. The victims related what had happened, explaining what was missing. Officer Sikara testified he realized that a felony had been committed and that the perpetrator might still be on the premises. He thereupon left the room and went to the 8th floor of the hotel. He searched the halls and the restrooms, but found no one. He descended to the 7th floor and thinks he searched that floor. He then went to the 6th floor. Coming out of the elevator he proceeded along the corridor to the right. He turned right and then right again. As he turned the second corner he noticed defendant standing in the hallway, just looking at the door or the wall or something. There was no other person in the hall. As the officer started to walk towards defendant, the latter started to walk towards him. As they met, the officer, in looking at defendant, thought he seemed a little confused and dazed. When asked what he was doing wandering around the halls at 3 o'clock in the morning, defendant made no reply. Asking three or four other questions the

officer received either a stammering or no reply. When defendant was asked if he lived in the building, defendant either replied affirmatively or did not reply.[2] Defendant appeared to be "a little seedy and very unneat in appearance." The officer was of the opinion that defendant was not a guest at the hotel. Defendant at no time stated where he lived. Defendant was very uncommunicative, distant and reluctant. The officer asked defendant if he had something with which to identify himself. Defendant produced a piece of paper with the name Henry Wozniak, "some type of certificate from high school" which the officer did not think was sufficient evidence of identification. The officer then searched defendant and found some skeleton keys, "a money clip that fitted the description of the complainant's stolen money clip, a wrist watch that fitted the description of the complainant's wrist watch, and about—well, it's hard to say, but a big roll of bills, and I knew there had been a hundred or so dollars stolen." The officer then took defendant to the victims' room, where the victims identified the property found on defendant. In the hotel room, the officer asked defendant where the suit of clothes was. Defendant refused to say, although the officer "told him that it would probably go easier on him if he cooperated." The officers took defendant to the 8th floor to search for the suit. They did not find it there. When they reached the 7th floor defendant said he would take them to where the suit was. He led them to the women's toilet where the suit was hidden. When asked where the pocket secretary and wallet were, defendant replied that he had given them to a woman accomplice who had left earlier.

Defendant did not testify. Defendant tried the case in propria persona.[3] In his argument to the jury he contended that he had explained to Officer Sikara how he happened to have the stolen property in his possession. Sikara denied this. Defendant at no time attempted in his argument to explain the possession.

### 1. Alleged unlawful search.

■ Defendant's contention that Officer Sikara did not have reasonable cause to arrest or search him and that therefore the admission in evidence of the property found in the

---

[2]The officer testified on direct examination that defendant replied "Yes." On cross-examination he stated that defendant did not reply.

[3]Defendant is represented on this appeal by counsel appointed by this court.

search of defendant's person was inadmissible, is completely without merit. A peace officer can make an arrest without a warrant whenever "he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed." (Pen. Code, § 836, subd. 3; see *People* v. *Schellin* (1964) 227 Cal.App.2d 245, 249 [38 Cal.Rptr. 593] and cases there cited.) ▮ Reasonable cause requires such a state of facts, known to the arresting officer, as would lead a man of ordinary care and prudence with the training and experience of a police officer "to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Williams* (1961) 196 Cal.App.2d 726, 728 [16 Cal.Rptr. 836], hearing denied; see *People* v. *Cowman* (1963) 223 Cal.App.2d 109, 117-118 [35 Cal.Rptr. 528]; Witkin, Cal. Criminal Procedure (1963) § 102 et seq., pp. 101-104; *People* v. *Swayze* (1963) 220 Cal.App.2d 476, 488 [34 Cal.Rptr. 5].) Though the subject of much judicial scrutiny and decision, "reasonable or probable cause" has not been and in the nature of things cannot be the subject of any exact formula. Each case must be decided on its own facts and circumstances. (*People* v. *Ingle, supra,* at p. 412.)
▮ "When the legality of the arrest or of a search and seizure is properly and timely raised, the defendant makes a prima facie case by establishing that an arrest or search without a warrant has been made. The burden then rests upon the prosecution to show that the officers had reasonable cause for the arrest or search." (*People* v. *Swayze, supra,* p. 488.) ▮ Once that determination has been made by the trial court, the question before the appellate tribunal is whether there is substantial evidence to support it. (*People* v. *Swayze, supra,* p. 489.)
▮ In the case at bench, Officer Sikara would have been derelict in his duty under the circumstances had he not arrested and searched defendant. ▮ (Whether the search or the arrest came first is immaterial here as it is well settled that if the circumstances justify an arrest the search may precede the arrest.) (*People* v. *Luna* (1957) 155 Cal.App.2d 493, 495 [318 P.2d 116].)
▮ Officer Sikara knew that a felony had been committed, that the victims' hotel room had been entered and certain described property taken. Although a half hour had elapsed since the burglary, it was reasonable to assume that

the burglar might still be in the building. After searching two floors of the hotel, the officer found defendant on the 6th floor standing alone in the hall as far away from the elevator as he could get and facing a door. Defendant's replies, or lack of replies, to the officer's inquiries as to what he was doing there at that hour of the morning were unsatisfactory. From defendant's appearance and the circumstances, the officer reasonably was entitled to doubt that defendant was a guest of the hotel. Moreover, under the circumstances, a guest would have volunteered the room he was staying in. "[S]ome type of certificate from high school" was hardly sufficient identification under the circumstances. Thus, the circumstances were such as would cause any reasonable person to have an honest and strong suspicion that defendant was responsible for the burglary upstairs.

Nor was the search incident to the arrest objectionable as exploratory. The arresting officer knew that certain items had been taken and was looking for evidence, not of other crimes, but of the one he knew had been committed upstairs. (Cf. *People* v. *Haven* (1963) 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927].) Neither *Gilbert* v. *United States* (1961) 291 F.2d 586, nor *Lee* v. *United States* (1956) 232 F.2d 354, cited by defendant on this appeal, is in point. Both deal with situations wherein the arrests were made with the intent to effect a search of a particular area.

*2a. Admissibility of defendant's statements.*

Defendant contends that his statements to Officer Sikara were involuntary as a matter of law. Officer Sikara testified concerning the events preceding his bringing defendant to the victims' room and the identification there by the victims of their property. He was asked if he then had any conversation with defendant. He replied that he had. He was then asked if any promises of reward or immunity were made to defendant. The officer stated "We attempted to have him admit where he hid the suit. . . . I told him [defendant] that it would probably go easier on him if he cooperated." The officer further stated that defendant asked to see him outside of the room and in the absence of the other officer. He was then asked if defendant requested special consideration, to which the officer replied "That's the inference I got." At this point the court stated that it was concerned about the officer's statement concerning cooperation and would like to discuss the matter outside of the presence of the jury, ex-

cused the jury temporarily, and adjourned to chambers. There, in the absence of the jury, the court referred to Fricke [Cal. Crim. Evidence] Fifth Edition, page 69, concerning the admissibility of a confession and read the following quotation (citation not given) :[4] " 'It does not necessarily follow . . .' this would indicate that you have some proper exploration to indulge in yet '. . . that a confession will be held inadmissible where a defendant is told that it would be "better" for him to tell the truth, and it has been held that the mere fact that the officers made such a statement to the accused would not render the confession inadmissible where, when all of the circumstances attending the confession were taken into consideration, it appeared that the confession was free and voluntary' citing three cases.

" 'No single word, phrase or sentence addressed by an officer to a prisoner can of itself determine whether an ensuing confession is free and voluntary. All of the facts and circumstances preceding the confession must be taken into consideration and when the entire proof shows that the confession was made freely and voluntarily the confession becomes admissible even though some isolated expression of the officer ... might indicate that some inducement was held out to the prisoner.' " The court then stated that it would have to permit the prosecutor to question further on this subject, and that "It will be a question for the jury to determine ... Whether or not it was free and voluntary."

The trial then resumed before the jury without objection by defendant. Further examination of Officer Sikara developed that defendant asked the officer if he would help defendant if defendant told him where the suit was. The officer replied that defendant was under arrest on a felony charge and "I cannot make any promises to you." It was not until after the officers had searched the 8th floor and arrived at the 7th floor that defendant stated he would take them to the suit.

 It cannot be said as matter of law that where the officer, as here, definitely told defendant that he could not help him, the mere statement by the officer that it would be better for defendant if he cooperated made defendant's statements involuntary. Particularly is this so when defendant did not make any statement until after the officer told him that

---

[4]Apparently the court assumed that defendant's statements which the officer was going to give constituted "confessions."

he was under arrest for a felony and that the officer could not help him. It was only when defendant knew that the officers were searching the toilets on each floor and would have discovered the suit that defendant made the statements.

During the direct examination of Officer Sikara and when he was asked if he had had a conversation with defendant about the suit, defendant interrupted and asked permission to make Sikara his witness. The court merely stated ''not now, ... I want to declare a recess in view of what the officer said,'' and did declare a recess. The defendant made no request thereafter to make Sikara his witness. It is quite significant, too, that defendant when questioning Sikara on cross-examination did not question the latter on anything relating to the voluntariness of defendant's statements. The court did not err in admitting the evidence. The ultimate determination of the voluntariness of the statements was for the jury.

■ Defendant contends that the court should have advised defendant that he could take the stand on *voir dire* for the limited purpose of showing the effect that the officer's statement had upon him and whether or not he had in fact construed it as a promise of leniency. Defendant cites no authority to this effect, nor have we found any. In *People* v. *Williams* (1960) 187 Cal.App.2d 143, 147 [9 Cal.Rptr. 540], the court held that defendant, if he requests it, must be given the opportunity to overcome a prima facie showing of voluntariness. Defendant made no claim that his statements were not voluntary nor did he at any time ask to take the stand on this subject. Defendant throughout the trial showed considerable skill in the examination of witnesses and in his handling of the case. (His prior convictions indicate that he had had some court experience.) He had been represented by the public defender but before trial discharged him because the latter's action ''would be a very good show put up for you and for the Court, very strenuous show, but eventually the outcome would be in favor of the prosecution. ...''

*2b. Applicability of People v. Dorado.*

Subsequent to the trial in this case *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977] and *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361] were decided. Although not submitted to the trial court, the effect of those decisions on the admission of defendant's statements must be considered by us. (See *People* v. *Hillery* (1965) 62 Cal.2d 692 [44 Cal.Rptr. 30, 401 P.2d

382] and *People* v. *Davis* (1965) 62 Cal.2d 791, 796 [44 Cal.Rptr. 454, 402 P.2d 142].) The record is silent upon the question of whether, before defendant made the statements attributed to him, Officer Sikara advised defendant of his right to counsel and to remain silent. However, we cannot presume that such advice was given. (See *People* v. *Stewart* (1965) 62 Cal.2d 571, 580 [43 Cal.Rptr. 201, 400 P.2d 97].) Moreover, reading of the record shows that Officer Sikara apparently testified to the whole of the conversation between him and defendant. It appears therefrom that such advice was not given.

In *Dorado* the court held that the defendant's *confession* could not be introduced into evidence "because (1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights." (62 Cal.2d at pp. 353-354.)

Our first inquiry, then, must be whether defendant's statements were confessions or merely admissions. " 'A confession is a voluntary statement that was made by one who is a defendant in a criminal trial, at a time when he was not testifying in that trial, by which he acknowledged certain conduct of his own that constituted a crime for which he is on trial, a statement which, if true, discloses his guilt of that crime and excludes the possibility of a reasonable inference to the contrary.' [Citations.] As said in *Ferdinand,* a confession 'leaves nothing to be determined, in that it is a declaration of his [defendant's] intentional participation in a criminal act. . . .' [Citation.]" (*People* v. *Swayze, supra,* 220 Cal.App.2d 476, 492.) A confession "is not equivalent to statements, declarations, or admissions of facts criminating in their nature or tending to prove guilt. It is limited in its meaning to the criminal act, and is an acknowledgement or admission of participation in it.' " (*People* v. *Ferdinand* (1924) 194 Cal. 555, 569 [229 P. 341].) "An admission as applied to criminal law is something less than a confession, and is but an acknowledgement of some fact or circumstance which in itself is insufficient to authorize a conviction, and which tends only toward the proof of the ultimate fact of guilt." (P. 568.) When the statement is such

that it contains only facts from which guilt may be inferred, it is an admission rather than a confession. (*People* v. *Elder* (1921) 55 Cal.App. 644, 647 [204 P. 29]; *People* v. *Luzovich* (1932) 127 Cal.App. 465, 469 [16 P.2d 144].)

Applying the above tests to defendant's statements it is clear that they do not amount to a confession. Although his statements were somewhat incriminatory, at no time did defendant admit participating in the burglary. By his statements he admitted knowledge only of the whereabouts of the suit, the pocket secretary and the wallet.

In *People* v. *Wilkins* (1910) 158 Cal. 530, 534 [111 P. 612], it was held that the admission by the defendant that he buried the body of the murdered woman was not a confession that he committed the murder, even though it might be a confession of the crime of secret burying of a human body. Thus, in our case, the admissions made by defendant were not necessarily inculpatory of the crime of burglary, even though possibly inculpatory of the crime of receiving stolen property.

In the case at bench, at the time the defendant made his statements to the officer all of the elements of *Dorado* were present: (1) the investigation had focused upon defendant, (2) defendant was in custody, (3) defendant was not warned as to his right to counsel and to remain silent, and (4) the officers were carrying out a process of interrogation that lent itself to eliciting incriminating statements. While it is true that the officer's questioning concerned the whereabouts of the stolen property, it appears that at the same time the officer's interrogations lent themselves to eliciting incriminating statements. Officer Sikara said "We attempted to have him admit where he hid the suit." When he asked defendant as to the whereabouts of the wallet and pocket secretary "we had to ask him, like we did all the questions, four or five times."

However, under the circumstances of this case, admission in evidence of defendant's statements could not have been prejudicial to defendant. *Dorado* contemplates that the introduction in evidence of statements which are not confessions but merely admissions, as are the statements here, and which come under the *Escobedo* and *Dorado* rules, may not necessarily be prejudicial error. "[U]nder some circumstances the introduction into evidence of statements obtained from a defendant during police interrogation in violation of his right to counsel and his right to remain silent may con-

stitute harmless error'' if the statements are not confessions. (*People* v. *Dorado, supra,* 62 Cal.2d 338, 356.) See also *People.* v. *Hillery, supra,* 62 Cal.2d 692, 712, holding that where statements which are not confessions are erroneously admitted the question of prejudice may be considered. Thus section 4½ of article VI, California Constitution may be applied.

 *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], gives the test for applying section 4½ ''That a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'' In *People* v. *Finn* (1965) 232 Cal.App.2d 422, 428 [42 Cal.Rptr. 704], the court held that it is a question of fact to be determined in each case by the reviewing court whether or not the admission of a statement not amounting to a confession, which violates *Dorado,* prejudices the defendant and deprives him of a fair trial.

In the following cases the admission of statements violating the *Dorado* rule was held not to be prejudicial under the circumstances of the particular case: *People* v. *Galloway* (1965) 233 Cal.App.2d 369, 374 [43 Cal.Rptr. 617] (where the defendant was asked after arrest concerning his possession of the stolen property); *People* v. *Nelson* (1965) 233 Cal. App.2d 440, 444-445 [43 Cal.Rptr. 626] (where the defendant's statements at three different police interrogations were admitted); *People* v. *Ghimenti* (1965) 232 Cal.App.2d 76, 84 [42 Cal.Rptr. 504] (where the defendant after arrest was asked as to ownership of the clothes in which the contraband was found and ''a spontaneous reply to an impulsive remark''); *People* v. *Beverly* (1965) 233 Cal.App.2d 702, 717 [43 Cal.Rptr. 743] (where defendant made several statements after arrest including replies in an investigation recorded on a tape); *People* v. *Herrera* (1965) 232 Cal.App. 2d 558 [43 Cal.Rptr. 12]; *People* v. *Jones* (1965) 232 Cal. App.2d 379, 392 [42 Cal.Rptr. 714].

 The fact of defendant being in the hall, having in his possession several skeleton keys and some of the stolen property; defendant's conduct when asked by Officer Sikara what he was doing in a hotel hall at that hour of the morning (a question which does not come within *Dorado,* as it was purely investigatory); and the other circumstances of the

case, in the light of the tests set forth in *People* v. *Watson, supra,* indicate so clearly defendant's guilt of the crime charged that the absence of the statements made after defendant was taken to the victims' room could not possibly have changed the result.

*3. Jury's hearing evidence as to the admissibility of the evidence obtained by search and seizure.*

Defendant contends that the evidence concerning the legality of the search and seizure should not have been admitted before the jury.

The question of the admissibility of evidence obtained as a result of an alleged illegal search and seizure is one to be determined outside the presence of the jury. (*People* v. *Gorg* (1955) 45 Cal.2d 776, 780 [291 P.2d 469]; *People* v. *Haven, supra,* 59 Cal.2d 713, 715.) "The probative value of evidence obtained by a search or seizure, however, does not depend on whether the search or seizure was legal or illegal, and no purpose would be served by having the jury make a second determination of that issue. Moreover, the legality of a search or seizure will frequently depend on whether the officer had reasonable cause to make an arrest, and since such cause is not limited to evidence that would be admissible at the trial of the issue of guilt [citation], evidence that was otherwise inadmissible and prejudicial would frequently be presented to them if the jury were required to pass on the legality of the search or seizure." (*People* v. *Gorg, supra,* at p. 781.)

Defendant, during his examination of one of the victims, first asked the court's permission to bring the circumstances relating to the search and seizure before the jury. The court stated the defendant could do so, but reminded defendant that this issue was one for the court to decide. Defendant replied that he understood that. There was no objection made to the examination of Officer Sikara with respect to the circumstances surrounding defendant's arrest and search. The items found on defendant were marked for identification. Defendant then moved that the testimony of the officer be stricken. The court considered the motion as based on the contention that the search and seizure were illegal, and denied the motion. Defendant then stated: "I haven't made that motion yet, Your Honor." The court then withdrew its ruling, and defendant continued his cross-examination. He inquired into the same points and circumstances as those

gone into on direct examination. Defendant then for the first time and in the presence of the jury moved that the testimony of the officer be stricken on the ground that it related to an illegal search and seizure. The court stated the rule with respect to reasonable cause, summarized the facts brought out so far by the testimony, and held that there had been no unreasonable search and seizure. The court, when defendant persisted in going into it further, again stated to defendant that the issue was not one for the jury.[5] Nevertheless, defendant continued to pursue the inquiry. [19] Having inquired into the circumstances surrounding his arrest and being aware of his right to exclude evidence illegally obtained, defendant manifested clearly his intention to present those circumstances to the jury despite advice from the trial judge that the court, not the jury, made the relevant decision. Therefore, no error is shown. (See *People* v. *Reyes* (1962) 206 Cal.App.2d 337, 344 [23 Cal.Rptr. 705], hearing denied.)

### 4. Failure to appoint advisory counsel.

Under the circumstances of this case, the contention cannot be upheld. It is a well-settled proposition of law in California that a defendant in a criminal case has no right to appear and defend in person *and* with counsel. (*People* v. *Mattson* (1959) 51 Cal.2d 777, 789 [336 P.2d 937]; *People* v. *Lopez* (1963) 60 Cal.2d 223, 255 [32 Cal.Rptr. 424, 384 P.2d 16].) In this case, moreover, there was no request for advisory counsel. As stated before, defendant had been represented during the early stages of his prosecution by the public defender. He elected to discharge such representative and proceed with his own defense. Thus, he cannot now claim that he was deprived of any right.

### 5. Alleged prejudicial misconduct of district attorney.

Defendant's contention that the prosecuting attorney was guilty of misconduct is based upon (1) the comment by the district attorney in his opening statement at the beginning of the trial that "defendant stated he committed the burglary," which statement the prosecution failed to prove, and (2) his comment that defendant was an escapee from a state

---

[5] "THE COURT: It's not a question for the jury. DEFENDANT WOZNIAK: I don't care, but I would like to go into it further. THE COURT: It is not a question for the jury. DEFENDANT WOZNIAK: Q. Officer, at the time he did produce—the defendant—I had produced the so-called insufficient identification, and then what did you do then?"

prison. As to the first comment there is no evidence that defendant actually stated that he committed the burglary. However, there were two highly incriminating admissions which come close to an admission of guilt, namely, defendant stated that he would take the officers to the place where the missing suit was hidden and that he gave the pocket secretary and the wallet from the suit to a woman.

The district attorney in his opening statement said, and the court instructed, that nothing he said in his opening statement could be considered as evidence. No showing of bad faith was made here. See *People* v. *Williams* (1962) 202 Cal.App.2d 387, 397 [20 Cal.Rptr. 740], where the court said: "In the present case, the defendant made no objection to the statement of the district attorney and if he knew such statement could not be proven, should have objected at the time instead of relying on the possibility of a later reversal."

The applicable rules with respect to comments in the opening statement which are allegedly not substantiated by the evidence subsequently admitted were summarized in *People* v. *Ramsey* (1959) 172 Cal.App.2d 266, 272-273 [342 P.2d 287]. In his opening statement, it is the duty of an attorney to refrain from referring to facts which he cannot or will not be permitted to prove. However, failure to produce the proffered proof, either because of the rules of evidence or for any other reason, does not necessarily indicate prejudice. The statement does not and cannot be considered as evidence nor can it be binding on anyone. "Because of the limitations upon the effect of the opening statement, one who asserts it as misconduct must prove more than the mere failure to adduce the testimony described in it." (*People* v. *Ramsey, supra,* p. 272.) In the absence of a showing of bad faith or showing that the district attorney offered the statement without any intention of trying to support it by evidence, it cannot be said that the district attorney was guilty of misconduct because he failed to produce such evidence.

As to the second comment, defendant, while examining Sikara, asked for production of the report Sikara had made of defendant's arrest. The court instructed the officer to produce it and told defendant to read it. It proved to be the report of both arresting officers. Defendant said that he wanted the officer to read it as defendant did not know what was in it. This the officer did. It was quite a long report. Included in it were references to defendant's prior convictions and a statement that defendant was a runaway from a

conservation camp at Willits, California. Defendant at no time objected to this reference nor requested that the jury be admonished to disregard it. In his opening statement the district attorney said ''The defendant first told the officer that he was an escapee from the State prison. . . .'' Defendant made no objection at that time. However, after the district attorney finished his opening statement defendant moved for a mistrial on the ground that the district attorney had stated that he would introduce evidence which was not admissible. The court asked to what statements he alluded. Defendant did not reply directly so the court asked if the objectionable matter was the district attorney's reference to defendant's charged prior convictions. Defendant answered that they might not be admissible. The court then pointed out that as defendant had denied these convictions, proof of them would be admissible. Defendant did not specifically refer to the district attorney's reference to the escape. It was probably improper for the district attorney to refer to this matter, although the People contend it showed a motive for the burglary. However, the statement could not have been prejudicial in view of defendant's failure to specifically object, but more importantly in view of the fact that defendant brought the fact of his escape before the jury when he insisted on the officer reading the police report which mentioned it, and in view of the conclusiveness of the evidence against defendant.

### 6. Alleged prejudicial misconduct of trial judge.

 Defendant contends that the court argued the prosecutor's case by the statement made to defendant hereinafter set forth. Defendant first points out that there was a conflict in Sikara's testimony as to whether defendant, when asked if he lived in the hotel, said he did or made no reply. In discussing with defendant the latter's contention that the search was without legal cause, and in summing up the evidence which the court stated gave probable cause for the search, the court among other things said ''You didn't say to him [Sikara], I live in room so and so, come down to the room clerk and I will tell you who I am and where I live and show you the room I am in or what you were doing there at 3:00 o'clock in the morning.'' This was a legitimate comment by the judge in explaining his reasons for ruling against defendant as to the legality of the search. The court fully instructed the jury that the credibility of the witness was

a matter solely for its determination. There was neither error nor prejudice here.

 After the court had several times ruled on the same objections made by defendant and after defendant on cross-examination of Sikara had several times asked him if he left out of the police report defendant's explanation of his possession of the stolen property and Sikara had admitted leaving such explanation out because none was given, the court, in admonishing defendant to discontinue making arguments with each question as defendant had been doing, said "Now, I don't mean to be facetious either, but this isn't your first time in court and I want you to cooperate a little with me. I am trying to be patient with you."

There was certainly no "strong implication" as defendant contends that defendant was an experienced defense attorney. In *People* v. *Dunaway* (1963) 222 Cal.App.2d 322, 328-329 [35 Cal.Rptr. 154], a similar contention was made. There the defendant was asserting asides and comments in his conduct of his defense. The court stated: "I'm sure Mr. Dunaway, you have had experience in presenting matters to the Court before. Now, you have been—MR. DUNAWAY: I'm not an attorney—I had not had experience." (P. 328.) Again, during the prosecutor's cross-examination of one of the defendant's witnesses, the defendant objected. "THE COURT: Mr. Dunaway, please, you have had experience in this sort of thing before, and I've repeatedly told you not to make these asides." (Pp. 328-329.) In our case no objection or motion to strike was made. Such failure waived any objection to the remarks made. Moreover, the remarks were not prejudicial.

*7. Alleged error in instruction.*

The court gave an instruction stating "I have admitted evidence that tends to establish a confession by the defendant" and then told the jury that before it could consider that evidence it must determine whether the confession was voluntary or involuntary. Defendant contends that the court erred in giving this instruction because there was no evidence of any confession by defendant. *People* v. *Nielson* (1960) 183 Cal.App.2d 20, 28-29 [6 Cal.Rptr. 367], holds that the giving of an instruction on confession, where the statements of the defendant do not amount to a confession, is erroneous. There, the defendant had described to the police what happened when he stabbed a man entering his trailer at night and had signed

a statement again describing the facts of the occurrence. The incriminating admissions were much stronger than in our case, yet they were held not to constitute a confession. The court held that the error in giving the instruction was prejudicial because ''We think from a consideration of the whole record that it is probable a result more favorable to appellant would have been reached by the jury had the instruction about confessions not been given.'' (P. 29.)

In *People* v. *Wade* (1960) 185 Cal.App.2d 226 [8 Cal. Rptr. 197], a prosecution for robbery, the court citing *Nielson, supra,* declared that the defendant's statements were admissions and not confessions, and held prejudicially erroneous an instruction on confession. The evidence detailed in the opinion indicates that it was extremely doubtful whether a conviction of the defendant could have been had without the giving of an instruction indicating that defendant had confessed his guilt. Moreover, the instruction itself gave more indication than the one in the case at bench that the court believed that the statements constituted a confession.

In *People* v. *Gardner* (1957) 147 Cal.App.2d 530 [305 P.2d 614], defendant, who was convicted of robbery on four counts, made several incriminating statements during the course of the investigation in the interrogation room of the police station which statements were taken down in shorthand and a transcript thereof read to the jury. The defendant admitted that he was driving the getaway car on three of the occasions charged. The court instructed the jury relative to confessions and admissions. Defendant claimed that there was no actual confession in the case and therefore it was error to instruct the jury concerning confessions. The reviewing court held that as the instruction correctly defined both an admission and a confession and left to the jury the question whether a confession had been made, and, if so, whether it was voluntary and true, there was no error.

In *People* v. *Tannehill* (1960) 187 Cal.App.2d 402 [9 Cal.Rptr. 675], defendant Tannehill and his codefendant were both found guilty of burglary and grand theft. The codefendant confessed to the burglary and defendant Tannehill made certain incriminating statements. The court instructed the jury on confessions and admissions using CALJIC Instruction No. 29 Revised. On appeal Tannehill contended that because he did not confess and the instruction as worded applied to both defendants, the jury was erroneously told that he had confessed. The court noted that the instruction

provided only that the " 'defendants themselves made statements tending to prove their guilt. . . . A statement thus made by a defendant may be either a confession or an admission.' " (P. 406.) Thereafter, the terms "confession" and "admission" were both defined. The court held that the mere giving of an abstractly correct instruction on confession as well as admission did not, on the facts of that case, constitute prejudicial error.

In *People* v. *Southack* (1952) 39 Cal.2d 578 [248 P.2d 12], immediately after the deceased was shot by a gun which the defendant was pointing at him, the defendant said to a police officer " 'Oh my God, I did it, I did it.' " The court held that this was an admission and not a confession and that "Therefore, the instructions as to confessions had no application to the evidence. However, defendant has not shown that, upon the record here, the giving of the abstractly correct instruction could have prejudiced him." (Pp. 584-585.)

In *People* v. *Fluery* (1958) 161 Cal.App.2d 630 [327 P.2d 47], a burglary case, defendant contended that the statements made by him to the police were not confessions and, therefore, the court erred in giving CALJIC Instruction No. 29 which defined a "confession" and an "admission" and 29-D which admonished the jury to view with caution an admission or a confession. Citing *People* v. *Southack, supra,* the reviewing court held that as "to the cautionary instruction relating to an oral admission or confession of defendant, it was not only proper, but should have been given, since there was evidence of certain admissions." (P. 637.) Although the first instruction given started "Evidence has been received in this case tending to show that on ... (occasions) other than this trial the defendant himself made ... (statements) tending to prove his guilt of the alleged crime ..." (p. 636, fn. 1), the court stated this was "not an instruction covering a 'confession' as such" (p. 637) and that there was no error in giving the instructions, apparently because the trial court defined both "confessions" and "admissions."

■ As we have hereinbefore held, defendant's statements to Officer Sikara were not confessions but merely admissions. Therefore, the instruction on "confessions" should not have been given. However, as shown by the foregoing authorities, the erroneous giving of such an instruction is not necessarily prejudicial. Whether it is so and whether section 4½ of article VI of California Constitution may be applied depends upon the circumstances of the case. Applying the

test set forth in *Watson, supra*, we are of the opinion that it is not reasonably probable that a result more favorable to defendant would have been reached if the court had not given the "confession" instruction.

### 8. *The comment and instruction on defendant's failure to testify.*

Defendant did not take the stand at the trial. The deputy district attorney commented on that fact in argument. The court instructed in effect that a defendant's failure to deny or explain evidence against him does not create a presumption of guilt or by itself warrant an inference of guilt nor relieve the prosecution of its burden of proof. However, as to any evidence which the defendant reasonably can be expected to deny or explain, his failure to do so may be taken into consideration as tending to indicate the truth of the evidence and that, among inferences that may reasonably be drawn from the evidence, those unfavorable to the defendant are the more probable. In the recent case of *Griffin* v. *California* (1965)\* 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106] the trial court gave an instruction on the failure of the defendant to testify similar to that given in the case at bench. The United States Supreme Court held "that the Fifth Amendment [to the United States Constitution], in its direct application to the federal government, and, in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." (P. 615.)

In *People* v. *Bostick* (1965) 62 Cal.2d 820 [44 Cal.Rptr. 649, 402 P.2d 529], the California Supreme Court applied *Griffin, supra*, to the fact that the prosecutor commented on the failure of the defendants to testify and the court instructed the jury regarding the legal effect of that failure, the instruction being similar to that condemned in *Griffin* and given in the case at bench. Our Supreme Court, after referring to the fact that the United States Supreme Court in *Griffin, supra*, "recently held that our comment rule violated the Fifth Amendment privilege against self-incrimination," stated "It follows, therefore, that the comment of the prosecutor and the trial court's instruction herein each constituted error. That portion of section 13 of article I of the California Constitution which purports to authorize such comment must

---

\*Filed April 28, 1965.

bow to the superior mandates of the Fifth and Fourteenth Amendments to the United States Constitution.

"Such error, unless it resulted in a miscarriage of justice, does not, however, automatically require a reversal if article VI, section 4½, of our Constitution is applicable to it. We are of the opinion that such section is applicable." (P. 823.) The court then discussed at considerable length both federal and California decisions which appear to have held that whenever error is predicated upon constitutional grounds, the judgment is reversible *per se,* and distinguished them, pointing out that in both federal and California decisions, erroneous denials of constitutional guarantees "have consistently been held not to require reversal when not prejudicial." (P. 826.) The court then determined "that the rule of article VI, section 4½, of the California Constitution is applicable to this situation [comment by prosecutor and instruction by the court on the defendant's failure to testify], . . ." (P. 827.) The court then went on to say that "we would ordinarily pass on the factual question whether the comments did or did not cause a miscarriage of justice. But we need not do so here because the judgments must be reversed for other reasons. . . ." (P. 826.) ▇▇▇ In the case at bench, for the reasons hereinbefore set forth as to the clear guilt of the defendant, we conclude that the errors in commenting and instructing on defendant's failure to testify were nonprejudicial as "there is no reasonable probability that the jury would have reached a result more favorable to defendant" (*People* v. *Hillery, supra,* 62 Cal.2d 692, 713), if such errors had not occurred.

Judgment is affirmed.

Sullivan, P. J., and Molinari, J., concurred.